# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH BROWN, VINCENT McLAREN, PHILIP FIELDS, CARLOS BORGES CARREIRO, PATRICIA SHEA-SCANLON, DHARAM SIAHGAL, ELVIS BUTCHER, LARRY HOLD, SCOTT GORDON, MICHAEL RASHAD, LORENZO WILEY, JAMES BROWN, GERARDO AGUIRRE, KEVIN REAVES, MICHAEL KALINOWSKI, and all others similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>UNITED AIR LINES, INC.,<br><br>       Defendant. | Civil Action No. 08-10689 NG |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

Defendant United Air Lines, Inc. ("United") submits this memorandum of law in support of its motion to dismiss the amended complaint in this purported class action on the ground that plaintiffs' claims are preempted by Section 105 of the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 41713(b)(1), and the Federal Aviation Act ("FAA"), 49 U.S.C. §§ 40101 *et seq.*, and its implementing regulations.

### INTRODUCTION AND SUMMARY

In recent years, United and other airlines have sought to keep airfares affordable by unbundling some services, such as meals and entertainment, from the price of transportation— that is, by imposing separate fees for those services only on passengers who choose to buy them. This case arises out of United's 2005 decision to unbundle the price of curbside baggage service at many airports and impose a $2 per-bag charge on passengers who elect to use this service.

Plaintiffs are "skycaps" (curbside baggage handlers) who allege that this decision has caused passengers to tip them less. And they seek damages under the Massachusetts Tips Law, Mass. Gen. L. c. 149, § 152A, and under various common law theories, including tortious interference with contractual relations and unjust enrichment.

Federal law forecloses all of these claims. The ADA, which vests exclusive jurisdiction in the federal government to regulate most aspects of air travel, expressly preempts any state-law claim that "relate[s] to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). Any state-law claim is preempted if it relates to just *one* of these three core elements of air travel; here, plaintiffs' claims relate to *two* of the three. First, plaintiffs claim that state law compels United to lower its price for curbside baggage-handling from $2 to $0—or, if it imposes any charge, to act as a mere collection agent for skycap tips—on the theory that "far fewer passengers will voluntarily tip in addition to paying this charge." Am. Compl. ¶ 1. These claims squarely violate the ADA's prohibition on state-law theories of liability "related to a *price*" charged by an air carrier. Second, and for similar reasons, all of plaintiffs' claims are "related to a . . . *service*" of an air carrier because they seek to control whether or not, and on what terms, United can charge for its curbside baggage service if it does not include that service within basic ticket prices.

Finally, to the extent that plaintiffs seek to hold United liable under the Massachusetts Tips Law for "not adequately notifying customers in writing that the charge is not a tip for the skycaps" (Am. Compl. ¶ 2), that claim is preempted not just by the ADA, but also by the Federal Aviation Act and its implementing regulations. That comprehensive federal scheme occupies the field of airline communications to passengers, including disclosures concerning the rates charged for baggage handling and other services.

**STATEMENT OF FACTS**

According to the amended complaint, the fifteen named plaintiffs in this purported class action are skycaps; some are employed by United and some are employed by third-party contractors; but all of the named plaintiffs who work in Massachusetts are employed by a contractor (Huntleigh Corporation), not by United. Am. Compl. ¶¶ 4-19. Plaintiffs allege that they traditionally received most of their compensation from passenger tips. *Id.* ¶ 23. They further allege that when United began assessing a $2 per-bag charge for curbside service in 2005, United retained those charges or passed them along to its contractors rather than paying them to skycaps as tips. *Id.* ¶¶ 26-27.[1]

Plaintiffs present two basic theories of liability. First, they suggest that, *even when fully apprised* that this $2 charge is not a tip, "far fewer passengers will give voluntary tips in addition to paying this charge." *Id.* ¶ 28. Second, they contend that "United has not satisfied the requirements of the Massachusetts Tips Law to adequately *notify* customers in writing that the charge is *not* a tip for the skycaps." *Id.* ¶ 30 (emphasis added).

Plaintiffs then assert various causes of action, each of which arises under state law. On behalf of all named plaintiffs, the complaint alleges that United's charge "constitutes unlawful interference with the implied contractual and/or advantageous relationship that exists between skycaps and Defendant's customers, under the common law of the various states in which the charge . . . has been instituted" (Count II) and "constitutes unjust enrichment under the common law of the various states in which the $2 charge . . . has been instituted" (Count III). On behalf of the Massachusetts skycaps, the complaint alleges that United has violated the Massachusetts

---

[1] In the wake of skyrocketing fuel prices, United recently announced that, apart from the $2 fee at issue here, it would begin charging fees for all checked baggage, whether checked at the curb or within the terminal building. *See* http://www.united.com/page/article/ 0,6722,52481,00.html (announcing general charges of $15 for first bag and $25 for second). Those location-indifferent charges are not challenged here.

Tips Law (Am. Compl. ¶¶ 2, 20; Count I), which provides in relevant part: "[i]f an employer or person submits a bill, invoice or charge to a patron or other person that imposes a service charge or tip, the total proceeds of that service charge or tip shall be remitted only to the . . . service employees . . . in proportion to the service provided by those employees." Mass. Gen. L. c. 149, § 152A(d). For these purposes, the Tips Law defines a "service charge" as "a fee charged by an employer to a patron in lieu of a tip to any . . . service employee . . . , including any fee designated as a service charge, tip, gratuity, or a fee that a patron or other consumer would reasonably expect to be given to a . . . service employee . . . in lieu of, or in addition to, a tip." *Id.* § 152A(a).

Finally, as relief, plaintiffs seek (among other things) restitution for the $2 per-bag charge collected since February 1, 2006; restitution for all wages, tips, and gratuities allegedly lost as a result of that charge collected since February 1, 2006; a statutory trebling of all damages for the Massachusetts skycaps under the Tips Law; and "[a]n injunction ordering Defendant to cease its violations of the law as described here" (Am. Compl. pp. 8-9), apparently by banning United from charging and retaining any fee specific to curbside check-in.

**ARGUMENT**

Federal law can preempt state law either expressly or by implication. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992); *see also New Hampshire Motor Transport Ass'n v. Rowe*, 448 F.3d 66, 74 (1st Cir. 2006). Here, plaintiffs' claims are barred both by the ADA's express preemption clause and, to the extent they rest on supposed deficiencies in United's communications with its passengers, by basic principles of field preemption as well. *See, e.g.*, *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300 (1988) (field preemption arises where, inter alia, "the pervasiveness of the federal regulation precludes supplementation by the States"

or "where the federal interest in the field is sufficiently dominant" (internal quotation marks omitted)).

I. **THE ADA EXPRESSLY PREEMPTS ALL OF PLAINTIFFS' CLAIMS**

   A. **The ADA Preempts Plaintiffs' State-Law Challenges To United's Imposition Of Curbside Check-In Fees**

Before 1978, the Civil Aeronautics Board ("CAB") had exclusive authority to regulate the rates charged and services offered by interstate air carriers. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992). When it enacted the ADA in 1978, Congress abolished the CAB and much of its regulatory scheme because it concluded that "maximum reliance on competitive market forces" would best further "efficiency, innovation, and low prices" as well as "variety [and] quality . . . of air transportation services." *Id.* (quoting 49 U.S.C. App. §§ 1302(a)(4), 1302(a)(9)).

To ensure that states would not fill the void with regulations of their own, Congress included a provision that, in its current form, expressly preempts any state "law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1); *see also Morales*, 504 U.S. at 378-379. "State common law counts as an 'other provision having the force and effect of law' for purposes of [the ADA]." *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 607 (7th Cir. 2000). The ADA "preempts both laws that explicitly refer to an airline's prices and those that have a significant effect upon prices." *Buck v. American Airlines, Inc.*, 476 F.3d 29, 34-35 (1st Cir. 2007) (ADA preempted state-law claims that American wrongfully retained fees and taxes on nonrefundable tickets); *see also Harrington v. Delta Air Lines, Inc.*, Civ. No. 04-12558, 2006 WL 1581752, at *3 (D. Mass. Feb. 21, 2006) (plaintiffs' state common-law claims arising from Delta's practice of retaining certain fees charged on non-refundable tickets affect Delta's prices and services and

- 5 -

are therefore preempted under the ADA) (copies of unpublished decisions and authorities are provided in the Compendium of Unpublished Authorities filed with the court).[2]

In *Morales*, the Supreme Court confirmed the "broad preemptive purpose" and "sweeping nature" of the ADA's preemption provision. 504 U.S. at 383-384. The Court held that the ADA preempts any state law that has a "*connection with* or *reference to*" rates, routes, and services, *id.* at 383-384 (emphasis added), even if the impact "is only indirect," *id.* at 386. The Court likewise held that the ADA preempts laws of general application as well as airline-specific laws, reasoning that it would be "utterly irrational" to create a "loophole" under which "state impairment of the federal scheme [w]ould be deemed acceptable so long as it is effected by the particularized application of general statute." *Id.*

Since *Morales*, the Supreme Court and the First Circuit have repeatedly reaffirmed the breadth of this ADA preemption provision, holding that "the ADA preempts both [1] laws that *explicitly refer to* an airline's prices and [2] those that have a *significant effect* upon prices." *Buck*, 476 F.3d at 34-35 (emphasis added); *see Rowe v. New Hampshire Motor Transp. Ass'n*, 128 S. Ct. 989, 994-995 (2008); *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 225-226 (1995). Indeed, this is one of the broadest preemption provisions in American law. Although recent decisions have blurred the scope of a similarly worded ERISA preemption provision, the ADA provision remains as straightforwardly "expansive" as ever because its "umbilical cord" to the ERISA provision "has . . . been severed." *Buck*, 476 F.3d at 34 n.7.

---

[2] Although a separate provision states that "[a] remedy under this part is in addition to any other remedies provided by law," 49 U.S.C. § 40120(c), that provision "does not carve any domain from the scope of § 105(a)(1)," *Mesa Airlines, Inc.*, 219 F.3d at 607, because "[a] general 'remedies' saving clause cannot be allowed to supersede the specific substantive pre-emption provision." *Morales*, 504 U.S. at 385. Even on its own terms, this provision "saves" only "remedies," not state-law duties. *See Abdullah v. American Airlines, Inc.*, 181 F.3d 363, 375-376 (3d Cir. 1999) (clause preserves state-law remedies for violations of federal duties).

Here, all of plaintiffs' state law claims—both common law and statutory—fall squarely within the ADA's preemptive scope. *First*, plaintiffs' claims "explicitly refer to" the *prices* United charges its passengers for curb-side baggage check-in. *Buck*, 476 F.3d at 34. Indeed, plaintiffs seek to *eliminate* any "price" for this service on the theory that "far fewer passengers will give voluntary tips in addition to paying this charge." Am. Compl. ¶¶ 1, 28. The ADA preempts any such claim, whether based on common law or statute, just as it preempts any other state-law effort to alter an airline's prices for anything else, such as meals, on-board entertainment, cancellation fees, or airfares themselves. Moreover, any state-level restriction on the price of such unbundled services is preempted not only because it "explicitly refers to" the "price" of *those* services, but also because forcing carriers to rebundle the price of such services into the airfares charged to all passengers would have a "significant effect" on those airfares as well. This is precisely the result that the ADA is intended to prevent. *See, e.g.*, *Buck*, 476 F.3d at 34-36 (ADA preempts state-law claims, brought on behalf of plaintiffs seeking recovery of taxes and other government fees collected during nonrefundable ticket purchases because, as a matter of "freshman-year economics," such claims would affect, and thus relate to, an airline's own "prices"); *Statland v. American Airlines, Inc.*, 998 F.2d 539, 542 (7th Cir. 1993) (ADA preempted plaintiff's state-law challenge to airline's 10% cancellation penalty because it is "obvious that canceled ticket refunds relate to rates").

*Second*, plaintiffs' claims are all likewise "related to a . . . *service*" of an air carrier in that they attempt to control whether or not, and on what terms, United may offer its curbside baggage service.³ If permitted to proceed, plaintiffs' state law theories would prohibit United from

---

³ There can be no question that baggage service is a "service" within the meaning of the ADA. Even before the Supreme Court's recent decision in *Rowe*, the clear majority of courts to consider the issue had already concluded that the term means "the provision or anticipated provision of labor from the airline to its passengers and encompasses matters such as boarding procedures, *baggage handling*, and food and drink—matters incidental to and

- 7 -

offering curbside baggage service on regular commercial terms—*i.e.*, for a charge. Because plaintiffs' theory of harm is that "far fewer passengers will give voluntary tips in addition to paying this charge" (Am. Compl. ¶ 28), United would have three options: (i) stop offering curbside check-in altogether, (ii) offer curb-side check-in for no extra charge (beyond the price of a ticket), or (iii) charge a fee and act as a mere collection agent for skycap "tips." Under any of these scenarios, the result would be direct state-level regulation of United's service. The divergent laws of 50 states, and not the market, would determine whether and on what terms United can charge for curbside baggage check-in and whether United can retain the proceeds. The ensuing "patchwork of state service-determining law, rules, and regulations" (*Rowe*, 128 S. Ct. at 996) is precisely the type of state regulation that the ADA is designed to preempt.[4]

The First Circuit's recent decision in *Buck*—which involved state-law claims that were *less* directly "related" to airline "prices" and "services" than those asserted here—is particularly instructive. In *Buck*, the plaintiffs had brought (among other claims) various state law causes of action based on allegations that, when passengers canceled their nonrefundable tickets, the defendant airlines wrongfully retained government-imposed fees and taxes collected at the time

---

distinct from the actual transportation of passengers." *Air Transport Assn. of America, Inc. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008) (emphasis added); *see, e.g.*, *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc); *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996); *Smith v. Comair, Inc.*, 134 F.3d 254, 259 (4th Cir. 1998). Although the Ninth Circuit had construed "services" as a term of art narrowly confined to air transport itself, *see Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259 (9th Cir. 1998) (en banc), that position is "inconsistent with the Supreme Court's recent decision in *Rowe*," *Cuomo*, 520 F.3d at 223; *accord Hanni v. American Airlines, Inc.*, 2008 WL 1885794, at *7 (N.D. Cal. Apr. 25, 2008), and with the intervening interpretation of the Department of Transportation, *e.g.*, *Petition for Rulemaking of the Tall Club of Silicon Valley*, Dkt. OST 2001-8991, Order 2002-07-36, at 4 n.8 (July 29, 2002). In any event, plaintiffs' claims are preempted because (as discussed above) they relate to "prices" whether or not they also relate to "services."

[4] *See, e.g.*, *Cuomo*, 520 F.3d at 223-224 (invalidating state law that "substitutes New York's commands for competitive market forces, requiring airlines to provide the services that New York specifies during lengthy ground delays," threatening a "patchwork of state service-determining law, rules, and regulations" (quoting *Rowe*, 128 S. Ct. at 996)); *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 611 (7th Cir. 2000) (regional airlines' claim against major carrier arising out of parties' code-sharing agreements preempted because claims concerned which carriers flew to which airports and the division of revenues); *Illinois Corporate Travel, Inc. v. American Airlines, Inc.*, 889 F.2d 751 (7th Cir. 1989) (plaintiff travel agency's claim that airline tortiously interfered with its relationship with the public by cabining its ability to sell the airline's tickets at certain prices was preempted).

of the ticket purchase. 476 F.3d at 31. The First Circuit held that, even though these state law claims were not directed at the underlying *airline*-imposed charges, they "cannot survive the ADA's broad preemptive sweep." *Id.* at 34. The court reasoned that, among other considerations, holding the airlines liable for failing to return the government-imposed surcharges would ultimately affect the airline's own base fares, given that airlines take such surcharges into account in setting those fares. *Id.* at 35-36. A finding of preemption follows *a fortiori* here, because the effect of plaintiffs' claims on United's prices is not indirect: plaintiffs wish to affect (indeed eliminate) the curbside baggage charges *directly*.

> B. **The ADA Preempts Any Claim That, Under The Massachusetts Tips Law Or Otherwise, United Communicated Inadequately With Its Passengers Concerning The $2 Per-Bag Charge**

As noted, plaintiffs appear to present two theories of liability. First, they attack United's underlying decision to impose any separate charge for curbside check-in, no matter what it tells passengers about the charge, on the ground that "far fewer passengers will voluntarily tip in addition to paying this charge." Am. Compl. ¶¶ 1, -28. Second, plaintiffs claim that even if United could impose such a charge, it "has not satisfied the requirements of the Massachusetts Tips Law to adequately *notify*" its passengers that the charge was a payment to United rather than income for skycaps. *See, e.g.*, *Id.* ¶ 30 (emphasis added).[5] The ADA preempts this second state-law theory of liability no less than the first.

The Massachusetts Tips Law provides that if an employer "imposes a service charge or tip" on a customer, "that service charge or tip . . . shall be remitted only to" the eligible

---

[5] United posted notices that the $2 fee was not a form of skycap compensation, although the wording may have varied from place to place. Those possible variations, along with the strong likelihood that many skycaps themselves told passengers that the charge was not a tip, would foreclose certification of any class whose members' individual claims could hinge on such issues. This motion to dismiss, however, does not address that and other class-certification issues raised in plaintiffs' motion for class certification, filed on August 11, 2008. United intends to move this Court to defer its consideration of the plaintiffs' motion pending a ruling on this motion to dismiss.

employees who provided the service. Mass. Gen. L. c. 149, § 152A(d). The statute defines "service charge" in relevant part as a "fee that a patron or other consumer would reasonably expect to be given to a . . . service employee . . . in lieu of, or in addition to, a tip." *Id.* § 152A(a). And the statute exempts an employer from liability for imposing an "administrative fee in addition to or instead of a service charge or tip, if the employer provides a designation or written description . . . inform[ing] the patron that the fee does not represent a tip or service charge[.]" *Id.* § 152A(d). Here, plaintiffs claim that the $2 per-bag fee is a "service charge" for Tips Law purposes because, they suggest, passengers might "reasonably expect" that it is a form of skycap compensation and that United's communications to passengers were not "adequate[]" to correct that impression. Am. Compl. ¶ 30. Plaintiffs thus conclude that United's failure to communicate more clearly with its passengers gives rise to liability under the Tips Law.[6]

Such state-level regulation of how and when airlines must communicate with their passengers *about service prices* in order to avoid liability is plainly "related to" both the "price[s]" charged by and the "services" offered by airlines—and thus runs headlong into the ADA's express preemption provision. The Supreme Court's *Morales* decision dispels any question on that point. In that case, a number of state attorneys general had adopted guidelines to govern the content and format of airline advertising and had undertaken to enforce those guidelines through state consumer-protection laws of general application, such as prohibitions on

---

[6] Simply as a matter of state law, the Tips Law should not be construed to apply in this context. The opening clause of the statutory definition indicates that a fee is a "service charge" only when imposed by the "employer" of the employees claiming entitlement to tips, and the complaint here alleges that all of the named plaintiffs in Massachusetts are employees of a third-party contractor rather than United. *But see DiFiore v. American Airlines, Inc.*, No. 07-10070, 2008 WL 2486255, at *4-*5 (D. Mass. June 19, 2008) (holding that "a service charge exists when a customer reasonably would expect a fee to go to a service employee, whether or not that fee is charged by the service employee's employer," but suggesting that the court would "entertain a motion to certify" its interpretation of "service charge" to the Massachusetts Supreme Judicial Court); *see also DiFiore* Docket 1:07-cv-10070 (unnumbered entry on July 17, 2008) (stating court will certify questions to Massachusetts Supreme Judicial Court). This Court need not reach that state law issue, however, if it dismisses the complaint on the federal preemption grounds discussed here. United thus defers any briefing on that issue until after the Court has ruled on this motion.

false and deceptive advertising. 504 U.S. at 379. The Court held that enforcement of those state consumer-protection laws in the air travel context would "quite obviously" relate to airline prices, because it would "establish binding requirements as to how tickets may be marketed if they are to be sold at given prices." *Id.* at 387-388. Moreover, the Court concluded that state-level restrictions on advertising would have the "forbidden significant effect upon fares" because the availability of advertising plays a distinct role in what fares airlines set. *Id.*

The same conclusion follows here. It makes no difference whether the state regulation concerns communications about airfares, as in *Morales*, or about baggage charges, as is the case here. In each instance, the regulation intrudes into areas that Congress committed to the discretion of the market and the federal government alone. *See Morales*, 504 U.S. at 390-391.[7] The state-level involvement in airline charges that flows from plaintiffs' complaint would be "price" and "service" regulation at its core.

Finally, although the court in *DiFiore v. American Airlines, Inc.*, 483 F. Supp. 2d 121 (D. Mass. 2007), reached a different conclusion about whether Tips Law claims are preempted by the ADA, the reasoning in that decision is inconsistent with the Supreme Court's intervening decision in *Rowe* and should not be followed. In *DiFiore*, skycaps claimed that American Airlines had violated the Tips Law by imposing a $2 per-bag curbside charge similar to the one at issue here. American argued that the ADA expressly preempted the Tips Law claims, and the district court disagreed, holding that "claims brought by airline employees generally escape preemption" as a categorical matter because of a supposed "heightened presumption against

---

[7] As discussed in Section II below, the Department of Transportation can and does regulate airline communications with passengers. *See, e.g.*, 14 C.F.R. § 253.4 (notice of terms incorporated by reference into contract of carriage). Particularly where basic rules are established by the Department, "applying the conflicting tort principles of 50 different states . . . would make a mess of things." *Mesa Airlines*, 219 F.3d at 611; *cf. Morales,* 504 U.S. at 390-391 ("the DOT retains the power to prohibit advertisements which in its opinion do not further competitive pricing"); *Wolens*, 513 U.S. at 228 n.4 (same).

preemption in areas of traditional state regulation such as employment law." *Id.* at 125-126. The court also cited cases holding that, although enforcement of ordinary wage or employment-discrimination laws in the airline context "may relate to airline prices, routes, or services, such a relationship is too tenuous to support preemption." *Id.* at 125.

*DiFiore's* holding is flawed in two fundamental respects. First, it contradicts the Supreme Court's intervening determination in *Rowe* that there is no "traditional state regulation" exception to the ADA's express preemption provision. *See* 128 S. Ct. at 996-997. In *Rowe*, Maine subjected motor carriers to certain recipient-verification and other regulations designed to keep tobacco products out of the hands of children. The Supreme Court held that these regulations violated the preemption provision in the ADA's motor-carrier counterpart—a materially indistinguishable provision that Congress modeled on the ADA, and which the *Rowe* Court interpreted in light of *Morales* and subsequent ADA cases. The Court rejected the state's argument that Congress had enacted this preemption provision primarily to reach "state 'economic' regulation" rather than traditional police-power concerns such as "protecting . . . citizens' public health." 128 S. Ct. at 997; *accord Cuomo*, 520 F.3d at 223. As the Court explained, Congress "declined to insert the term 'economic' into the operative language"; the operative language likewise "says nothing about a public health exception"; and the preemption provision should thus be construed to apply broadly to *all* state laws "with a 'significant impact' on carrier rates, routes, or services." *Rowe*, 128 S. Ct. at 997 (quoting *Morales*, 504 U.S. at 390) (emphasis omitted). The preemption provision likewise contains no "employment law" exception, and *Rowe* precludes reading one into the text.

Second, although the *DiFiore* court observed that a number of state employment-law claims have survived ADA challenges (*see* 483 F. Supp. at 125), those claims focused entirely on

- 12 -

the relationship between a carrier and *its employees*—for example, by enforcing nondiscrimination rules or traditional minimum wage requirements.[8] The plaintiffs in those cases did not direct their state-law theories at the relationship between a carrier and its *passengers*, and their causes of action were therefore deemed not to have "a 'significant impact' on carrier rates, routes, or services" offered to passengers. *Rowe*, 128 S. Ct. at 997 (quoting *Morales*, 504 U.S. at 390). In contrast, plaintiffs here *do* target the relationship between a carrier and its passengers. They focus on the *prices* charged by an airline for a specific passenger *service* and they seek to regulate the communications between the airline and its passengers *about* those prices and that service. As discussed, *that* use of state law could hardly be more "related to a price . . . or service of an air carrier." 49 U.S.C. § 41713(b)(1).

## II. THE FAA PREEMPTS THE FIELD OF REGULATIONS CONCERNING AIRLINE COMMUNICATIONS WITH PASSENGERS ABOUT BAGGAGE-HANDLING CHARGES

The ADA's express preemption provision forecloses all of plaintiffs' theories of liability, including any claim—under the Massachusetts Tips Law or otherwise—that United should be held liable for supposedly inadequate communications to passengers about the nature of the $2 per-bag fee for curbside baggage service. This Court need decide nothing more to dispose of this case. Nonetheless, even if the ADA did not itself preempt such claims, the Federal Aviation Act and its implementing regulations independently preempt such claims by comprehensively

---

[8] Even in those types of cases, courts have found ADA preemption of employment-law causes of action. *See, e.g.*, *Botz v. Omni Air Int'l*, 286 F.3d 488, 495 (8th Cir. 2002) (state whistleblower retaliation claim preempted because it relates to airline "service" by "authorizing a flight attendant to refuse assignments and protecting her when she does"); *Bower v. Federal Express Corp.*, 156 F. Supp. 2d 678, 689 (W.D. Tenn. 2001) (employee's discrimination claims preempted); *Fitzpatrick v. Simmons Airlines, Inc.*, 555 N.W.2d 479, 481 (Mich. Ct. App. 1996) (same); *Belgard v. United Airlines*, 857 P.2d 467, 471 (Colo. Ct. App. 1992) (same); *see also Wellons v. Northwest Airlines, Inc.*, 165 F.3d 493, 495 (6th Cir. 1999) (holding that although the plaintiff's state-law claims of *racial* discrimination were not preempted because they were only tenuously related to the airline's services, a different result may be appropriate for "claims of discrimination on the basis of physical characteristics that might have some bearing on the individual's ability to render service safely and efficiently").

occupying the field of airline-passenger communications about the price of airline services, including baggage-handling rates.

Field preemption, a species of implied preemption, arises when the "scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Moreover, because "[f]ederal regulations have no less pre-emptive effect than federal statutes," *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982), field preemption likewise arises whenever "the pervasiveness of the *regulations* enacted pursuant to the relevant statute . . . 'evidence[s] a desire to occupy a field completely.'" *Montalvo v. Spirit Airlines*, 508 F.3d 464, 470-471 (9th Cir. 2007) (quoting *R.J. Reynolds Tobacco Co. v. Durham County*, 479 U.S. 130, 149 (1986)) (emphasis added). In *Montalvo*, for example, the Ninth Circuit inferred from "a number of specific federal regulations govern[ing] the warnings and instructions which must be given to airline passengers" a general intent to "preempt state requirements for passenger warnings." *Id.* at 472-473; *see, e.g.*, *Abdullah*, 181 F.3d at 375 (holding that the Federal Aviation Act preempts "the entire field of aviation safety").

Here, any state-law claim predicated on inadequate communications to passengers about baggage-handling fees falls at the intersection of two pervasive schemes of federal regulation. First, pursuant to its statutory responsibility to oversee contractual relationships between airlines and passengers, *see* 49 U.S.C. § 41707, the Department of Transportation has issued extensive regulations to set "uniform disclosure requirements" concerning the terms of airline services, and that comprehensive scheme "preempt[s] any State requirements on the same subject." 14 C.F.R. § 253.1. Second, the Department of Transportation exercises plenary authority to "investigate and decide whether an air carrier . . . has been or is engaged in an unfair or deceptive practice[.]"

49 U.S.C. § 41712; *see Morales*, 504 U.S. at 390-391. Pursuant to that statutory responsibility, the Department recently issued mandatory guidance governing the types of notice airlines must post to inform passengers about fees for all checked baggage. *See* Dep't of Transportation, Notice, *Guidance on Disclosure of Policies and Charges Associated With Checked Baggage*, 73 Fed. Reg. 28,854 (May 19, 2008).

In short, the Federal Aviation Act and the Department's implementing regulations occupy the field of airline communications with passengers about the terms of service, including communications about baggage fees. Any state-law cause of action that challenges the adequacy of such communications is preempted for that reason alone, quite apart from express preemption under the ADA. Although the *DiFiore* court rejected a field-preemption defense to claims under the Massachusetts Tips Law, the court's analysis on that point is both irrelevant to United's field-preemption argument here and incorrect on its own terms. First, the airline in *DiFiore* had made a very different field-preemption argument—namely, that Congress "occup[ied] the field of *baggage liability*" under 47 U.S.C. § 41704. 483 F. Supp. 2d at 127 (emphasis added). As the *DeFiore* court explained, "the Massachusetts Tips Law does not enter that field." *Id.* But United is not arguing that plaintiffs' inadequate-disclosure theory is preempted by a pervasive scheme of baggage-liability regulation. Instead, United argues that this theory of liability is preempted by a pervasive scheme of regulation concerning airline *communications* with passengers, including communications about baggage-handling *fees*. Plaintiffs' claims under the Tips Law certainly do enter *that* field.

Second, relying on *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992), the *DiFiore* court held that "[t]he enactment of a limited express preemption provision"—that is, the ADA—"suggests that there is no field preemption." 483 F. Supp. 2d at 127. That is incorrect. Although

"[s]ome courts initially interpreted *Cipollone*" that way, the Supreme Court's subsequent decisions have rejected that position and indicate instead "that the presence of an express preemption clause that proves inapplicable does not impose any 'special burden' on one who then alternatively seeks to establish implied preemption." *Choate v. Champion Home Builders Co.*, 222 F.3d 788, 794 n.8 (10th Cir. 2000) (quoting *Geier v. American Honda Motor Co.*, 529 U.S. 861, 873 (2000)). Here, the ADA in fact preempts all of plaintiffs' claims; but even if it did not, that fact would not somehow insulate plaintiffs' inadequate-disclosure theory claims from ordinary principles of field preemption.[9]

---

[9] The *DiFiore* court also relied on the FAA's savings clause, but, as discussed, that savings clause preserves, at most, state law *remedies* for violations of federal duties, not otherwise preempted state law *causes of action*. *See* note 2, *supra.*

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that this Court dismiss plaintiffs' amended complaint in its entirety.

Respectfully submitted,

UNITED AIR LINES, INC.
By its Attorneys,

 /s/ Brigitte M. Duffy
Brigitte M. Duffy (BBO # 565724)
C.J. Eaton (BBO # 660726)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Telecopier:    (617) 946-4801

Bruce H. Rabinovitz (*pro hac vice* admission pending)
Jonathan E. Nuechterlein (*pro hac vice* admission pending)
Rachel Z. Stutz (*pro hac vice* admission pending)
WILMER CUTLER PICKERING HALE and DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006

DATED: August 13, 2008

---

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), including counsel for Plaintiffs, Shannon Liss-Riordan, Pyle, Rome, Lichten, Ehrenberg, & Liss-Riordan, 18 Tremont Street, Suite 500, Boston, MA 02109, on August 13, 2008.

   /s/ Brigitte M. Duffy
       Brigitte M. Duffy