UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                   )
JOSEPH BROWN, VINCENT McLAREN,     )
PHILIP FIELDS, CARLOS BORGES       )
CARREIRO, PATRICIA SHEA-SCANLON,   )
DHARAM SIAHGAL, ELVIS BUTCHER,     )
LARRY HOLD, SCOTT GORDON,          )
MICHAEL RASHAD, LORENZO WILEY,     )
JAMES BROWN, GERARDO AGUIRRE,      )
KEVIN REAVES, MICHAEL KALINOWSKI,  )
and all others similarly situated, )
                                   )   CIV. ACTION NO. 08-10689-NG
            Plaintiffs,            )
                                   )
     v.                            )
                                   )
UNITED AIR LINES, INC.,            )
                                   )
            Defendant.             )
_____)

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiffs, individuals who have been employed as skycaps at United Air Lines terminals around the country, bring this case challenging United's imposition of a $2 per bag charge for curbside check-in.  The crux of the skycaps' claim is that the $2 charge unlawfully impacts on skycaps' wages, both because it is a wage (in the form of a tip or service charge) that should have been paid to the skycaps under the Massachusetts Tips Law (as to the Massachusetts plaintiffs) and because it has interfered with skycaps' wages by causing a decrease in their tip income.

United's motion to dismiss Plaintiffs' claims must be denied.  First, United's argument that Plaintiffs' claims are preempted under the Airline

Deregulation Act must fail, because Plaintiffs' claims are not challenging an airline "price, route, or service"—they are challenging the airline's practice of imposing the $2 charge in such a way that it impacts skycaps' wages.[1]  This employment-related claim cannot be preempted by the ADA, which courts have held applies to preempt claims by airline passengers, not employees.  Second, Plaintiffs' Tips Law claim is not preempted by the Federal Aviation Act either.  Plaintiffs do not rest their argument on a contention that the wording on United's signs relating to the $2 charge should be changed to come into compliance with the Tips Law; they argue that the way in which the $2 charge is collected—cash-only, on the curb, collected by the skycaps themselves for services for which skycaps have traditionally received tips—not the particular signage, constitutes a violation of the Tips Law.

Notably, skycaps in a nearly identical case against American Airlines survived a motion to dismiss on this precise issue.  In <u>DiFiore, et al. v. American Airlines, Inc.</u>, Judge Young denied American's motion to dismiss based on its argument of ADA preemption.  483 F. Supp. 2d 121 (2007).  The case ultimately proceeded to a jury trial, in which a jury awarded nine skycaps more than $325,000 (which constituted all of the $2 charges that those skycaps had collected) and found a violation of the Massachusetts Tips Law and common law tortious interference.  Like <u>DiFiore</u>, this case should be permitted to proceed to trial on the skycaps' claims relating to the impact of the $2 charge on their wages.

---

[1]     It should be noted that United has suspended its $2 charge, so Plaintiffs seek only recovery of past damages.  Thus, United cannot argue that Plaintiffs are seeking to affect the price of a service.

2

## BACKGROUND

Skycaps traditionally received most of their compensation in the form of tips from airline passengers. Am. Compl. ¶ 23. In 2005, United began charging its passengers a $2 per bag fee for curbside check-in at a majority of its terminals throughout the country. (Id. ¶¶ 24–25). The $2 charge is cash-only, it is collected by the skycaps, on the curb, and it is charged for skycaps' services checking passengers' bags—the very services for which they have traditionally received tips. The Massachusetts plaintiffs allege that, under the Massachusetts Tips Law, Mass. Gen. L. c. 149 § 152A, the $2 charge is part of the skycaps' wage (in the form of a service charge), and that, accordingly, the proceeds from the charge should have been distributed in full to the skycaps. Nationally, the skycaps allege that the $2 charge caused a substantial reduction in their tip income and resulted in substantial revenue for United, in violation of the common law (specifically tortious interference and unjust enrichment).

In DiFiore v. American Airlines, Inc., nearly identical claims went to trial in connection with American's $2 curbside check-in charge. The evidence at the DiFiore trial revealed: (1) passengers hand the $2 in cash to the skycaps, and the skycaps put it in their pockets, then turn it over at the end of each shift; (2) the imposition of the $2 charge resulted in a drastic reduction in skycaps' income—for example, it had always been typical for passengers to give a $5 tip for two bags; since the imposition of the charge, passengers still give $5, but $4

goes to the airline and only $1 goes to the skycap; (3) passengers frequently make comments to the skycaps indicating that they think the $2 charge goes to the skycaps, including "this is for you," "here you go," "it's about time they started charging, a lot of people don't know to tip you," "this goes to you, right?," etc.; and (4) regardless of what it says, the signage relating to the $2 charge does not inform passengers about the $2 charge itself, nor does it inform passengers that the skycaps do not retain the proceeds from the $2 charge—it is hectic on the curb, passengers are in a rush and do not look at the signs, and many transactions take place at passengers' cars, not in front of the signs at all.

The jury in <u>DiFiore</u> returned a verdict for the plaintiffs and awarded damages equaling the amounts that each plaintiff had collected in $2 charges. Notably, the <u>DiFiore</u> jury found that the $2 charge violated the Massachusetts Tips Law (and constituted tortious interference) even for the period of time during which the signs that American had put on the curb regarding the $2 charge stated "gratuity not included."

**ARGUMENT**

The substance of United's argument is that federal aviation laws preempt the Plaintiffs' claims because those claims refer to and affect United's prices and services. This argument must fail for two reasons. First, the Plaintiffs' claims are those of employees seeking to vindicate their rights to recover wages owed to them. The federal courts have, again and again, held that similar claims are not preempted by federal aviation laws. Indeed, the cases cited by United in support of its argument all concern suits by passengers and state officers who sought to

4

regulate airline policies, as opposed to suits by employees who sought only to recover their wages.

Second, even if the Plaintiffs' claims somehow fall within the ambit of the ADA and FAA, their effect upon United's prices and services (to the extent they affect United's prices and services at all) is too tenuous, remote and peripheral to warrant preemption. Contrary to United's broad assertions, Plaintiffs' claims do not affect whether United may charge a fee for curbside check-in, nor are they aimed at regulating the amount of such a charge. Their claim is that the manner in which United has imposed its $2 charge constitutes an impermissible infringement on skycaps' wages.

I.  **THE PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY THE ADA BECAUSE THE PURPOSE OF THE ADA IS NOT TO PREVENT SUITS BY AIRLINE EMPLOYEES, AS NUMEROUS COURTS HAVE RECOGNIZED.**

   A.  **The ADA Does Not Preempt the Plaintiffs' Claims Because Employment-Related Claims Against Airlines Lie Outside the Preemptive Scope of That Statute.**

The ADA was enacted in order to address the airline industry's relationship with consumers by preventing state regulation of the market. See American Airlines, Inc. v. Wolens, 513 U.S. 219, 228 (1995) (the "ADA's purpose [is] to leave largely to the airlines themselves, and not at all to States, the selection and design of marketing mechanisms appropriate to the furnishing of air transportation services"); Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 680 (1987) ("Congress sought to ensure that [the ADA's] benefits [flowed] to the public") (emphasis added); Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1255 (11th Cir. 2003) ("[T]hrough the ADA Congress sought to leave the bargained-for

5

aspects of the <u>air carrier-air passenger relationship</u> to the workings of the market") (emphasis added).  To this end, most cases in which the federal courts have found preemption under the ADA, including all of those relied upon by United in its motion to dismiss, involved claims brought by airline passengers or state officials.[2]  Conversely, almost every federal court to consider the issue has rejected preemption in cases brought by airline workers.[3]  <u>See</u>, <u>e.g.</u>, <u>Gary v. Air Group, Inc.</u>, 397 F.3d 183, 190 (3rd Cir. 2005) (state law whistleblower claim not preempted by ADA); <u>Branche v. Airtran Airways, Inc.</u>, 342 F.3d 1248, 1262 (11th Cir. 2003) (same); <u>Air Transport Ass'n of America v. City and County of San Francisco</u>, 266 F.3d 1064, 1072 (9th Cir. 2001) (city ordinance prohibiting discrimination in assignment of employee benefits not preempted by ADA); <u>Wellons v. Northwest Airlines, Inc.</u>, 165 F.3d 493, 495 (6th Cir. 1999) (state law racial discrimination claim not preempted); <u>Californians for Safe & Competitive Dump Truck Transp. v. Mendonca</u>, 152 F.3d 1184, 1189 (9th Cir. 1998) (prevailing wage law enacted in only seven states at time of suit not preempted by Federal Aviation Administration Authorization Act); <u>Parise v. Delta Airlines, Inc.</u>, 141 F.3d 1463, 1466 (11th Cir. 1998) (state anti-age discrimination law not

---

[2]     <u>See</u>, <u>e.g.</u>, <u>American Airlines, Inc. v. Wolens</u>, 513 U.S. 219 (1995) (suit by frequent flier club members against airline for breach of contract); <u>Morales v. Trans World Airlines, Inc.</u>, 504 U.S. 374 (1992) (suit by airline company seeking injunction against enforcement of advertisement regulations by state attorneys general); <u>Buck v. American Airlines, Inc.</u>, 476 F.3d 29 (1st Cir. 2007) (claim brought by passengers who had purchased nonrefundable airline tickets); <u>Statland v. American Airlines, Inc.</u>, 998 F.2d 539 (7th Cir. 1993) (suit by passenger against airline); <u>Harrington v. Delta Air Lines, Inc.</u>, No. Civ.A. 04-12558-NMG, 2006 WL 1581752, *1 (D. Mass. 2006) (suit by passengers against airline).

[3]     The exceptions to this general trend are in the distinct minority, encompassing only a handful of federal and state cases.  <u>See</u>, <u>e.g.</u>, <u>Botz v. Omni Air Intern.</u>, 286 F.3d 488 (8th Cir. 2002) (employee whistleblower claim preempted by ADA); <u>Bower v. Federal Express Corp.</u>, 156 F. Supp. 2d. 678 (W.D. Tenn. 2001) (employee discrimination claim preempted); <u>Fitzpatrick v. Simmons Airlines, Inc.</u>, 555 N.W.2d 479 (Mich. Ct. App. 1996) (employee discrimination claim preempted); <u>Belgard v. United Airlines</u>, 857 P.2d 467 (Colo. Ct. App. 1992) (same).

6

preempted by ADA); Aloha Islandair Inc. v. Tseu, 128 F.3d 1301 (9th Cir. 1997) (employee disability discrimination claim not preempted); Abdu-Brisson v. Delta Airlines, Inc., 128 F.3d 77, 84 (2nd Cir. 1997) (same); Anderson v. American Airlines, Inc., 2 F.3d 590, 598 (5th Cir. 1993) (state anti-retaliation law not preempted by ADA); Santoni Roig v. Iberia Lineas Aereas de Espana, 688 F. Supp. 810, 817-818 (D.P.R. 1988) (local minimum wage and overtime laws not preempted by the ADA).  Indeed, courts in this district have reached such a conclusion on two occasions, holding that that ADA does not preempt the Massachusetts Tips Law, DiFiore, 483 F. Supp. 2d at 126 (D. Mass. 2007), or state age and disability discrimination laws, LaRosa v. United Parcel Service, Inc., 23 F. Supp. 2d. 136 (D. Mass. 1998).[4]

Judge Young's opinion in DiFiore is particularly instructive here, as it concerned an identical claim and an identical preemption argument by American Airlines.  In DiFiore, relying on the clear trend of cases holding that employee claims are not preempted by the ADA, the court reasoned that there exists a "heightened presumption against preemption in areas of traditional state regulation such as employment law." Id. at 125-26.  The court went on to describe the purpose and scope of the Massachusetts Tips Law, finding that it was, "at its core, a wage law," one which "has only a very attenuated relationship,

---

[4] Even outside the context of workers bringing wage-related claims, courts in this district have not hesitated to reject preemption of precisely the same common law claims the Plaintiffs bring here, where such claims had only a marginal relationship to prices or services. See, e.g., Kingsley v. Lania, 221 F. Supp. 2d. 93, 95 (D. Mass. 2002) (conversion claim brought by passenger whose property whose destroyed, allegedly for "security purposes"); Wolfson v. American Airlines, 170 F. Supp. 2d. 87, 93 – 94 (D. Mass. 2001) (tortious interference with contract claim brought against airline pilots by passengers whose flights were canceled because of pilot strike).

7

if at all, to airline prices, routes and services." Id. Accordingly, the court held that the ADA did not expressly preempt actions brought under the Tips Law. Id. Turning to the issue of implied preemption, the court rejected American Airlines' argument that the intent behind the ADA was to occupy the entire field of law applying to the air line industry. "Federal law does not," the court held, "so thoroughly occupy the field of airline employment 'as to make reasonable the inference that Congress left no room for the states to supplement [it]'." Id. at 127, quoting from Rice v. Sante Fe Elevator Corp., 331 U.S. 218, 230 (1947). Thus the court also refused to find implied preemption, and denied American Airlines' motion to dismiss.

Here, the Plaintiffs have all been employed as skycaps working at United terminals.[5] Their claims do not utilize state law or regulatory mechanisms as a means of influencing the airline industry's market relationship with consumers. Properly characterized, the foundation of this suit is the vindication of airline workers' wage rights under statutory and common law. In keeping with the consistent holdings of federal courts—including Judge Young in DiFiore, a case raising identical claims to those here—that wage- and other employment-related

---

[5] Generally, airlines in the United States (including United) do not "directly" employ skycaps. Instead, the airlines contract with companies to provide skycap services, and these contractor companies are the skycaps' "direct employers" which issue paychecks to the skycaps. However, the skycaps work at United terminals, serving United passengers, and adhering to United policies (such as the collection of $2 per bag from passengers for curbside check-in). Accordingly, Plaintiffs allege that United is the skycaps' joint employer. In any event, the claims against United here do not require that the skycaps establish joint employment—the Massachusetts Tips Law refers to actions by employers "or other person[s]," see Mass. Gen. L. c. 149 § 152A(b), (c), (d), and Plaintiffs' common law claims do not require that the skycaps are employed by United. Nevertheless, regardless of whether the skycaps are technically deemed to be employees of United, there can be no question that their claims in this case are wage-related—they are seeking to recover income that they lost due to the imposition of the $2 charge.

claims escape the preemptive effect of the ADA, this Court should hold that Plaintiffs' claims here are not preempted by the ADA.

> **B.     The ADA Does Not Preempt the Plaintiffs' Claims Because the ADA Was Never Intended to Interfere With the State's Traditional Police Power to Regulate Workers' Wages.**

Absent clear evidence of Congressional intent to the contrary, a presumption against preemption exists where a federal statute interferes with a state's traditional police powers.  New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995) ("[W]here federal law is said to bar state action in fields of traditional state regulation . . . we have worked on the 'assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress'"), quoting from Rice v. Sante Fe Elevator Corp., 331 U.S. 218, 230 (1947); DiFiore v. American Airlines, Inc., 483 F. Supp. 2d 121, 124 (2007) ("There is a presumption against preemption," which "has more bite 'where federal law is said to bar state action in fields of traditional state regulation'"), quoting from New York State Conference of Blue Cross & Blue Shield Plans, 514 U.S. at 655.  This presumption requires the federal courts to "tread cautiously" before finding preemption, since "the authority to displace a sovereign state's law is 'an extraordinary power. . . that we must assume Congress does not exercise lightly.'" Greenwood Trust Co. v. Commonwealth of Massachusetts, 971 F.2d 818, 823 (1st Cir. 1992).

Congress never intended for the ADA to supplant state protection of workers' wages.  State regulation of employment standards has traditionally been

9

afforded considerable deference by the federal courts, see Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994) ("Pre-emption of employment standards 'within the traditional police power of the State' 'should not be lightly inferred'"), quoting from Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 21 (1987), and workers' wages in particular "has long been an area of the law which is governed by a complementary web of federal and state legislation," Frank Bros., Inc. v. Wisconsin Dept. of Transp., 409 F.3d 880, 888 (7th Cir. 2005). Indeed, courts have long recognized that, with respect to workers' pay, federal law sets a floor, not a ceiling, and that states may establish further protection. See Maccabees Mut. Life Ins. Co. v. Perez-Rosado, 641 F.2d 45, 46 (1st Cir. 1981) ("There is no reason to doubt that the states themselves retain traditional police powers which can be directed for the benefit" of employees who fall outside of the "minimal federal protection offered in the [Fair Labor Standards Act]"). It would be inimical to this principle to construe the ADA so broadly as to preempt the Plaintiffs' claims here, despite Congress' evident intent.

In fact, in enacting the ADA itself, Congress listed "encouraging fair wages and working conditions" as one of the important policy matters underlying the ADA. 49 U.S.C. § 40101(a)(5). "Congress sought to ensure that the benefits to the public flowing from this deregulation would not be 'paid for' by airline employees," Alaska Airlines, Inc., 480 U.S. at 680, but instead intended for "the airlines who benefited from the deregulation" to pay for these costs. Robinson v. American Airlines, Inc., CIV. A. No. 86-1674, 1987 WL 49708, at *1 (D.D.C. 1987). Congressional intent to protect airline workers' rights under the ADA is

10

nowhere more evident than in the following statement, taken from a Senate Committee Report regarding the ADA:

> [A]n individual employee will be able to do little to adjust to the new structure. Many airline employees have given most of their working lives to the air transportation industry and have too much invested to leave it now.

S. Rep. No. 631, 9th Cong., 2d Sess. 114 (1978).  This explicit intent to shield airline workers from the preemptive effect of the ADA, coupled with the recognized importance of protecting workers' wages, sets the bar high for preemption in this case.  Congress did not intend the costs of deregulation to be borne on the backs of workers in the airline industry.

Here, United has instituted a policy that requires the Plaintiffs to hand over $2 per checked bag in cash, which effectively comes out of their tips, either because the charge is properly characterized as a tip under state law or because the charge improperly interferes with their ability to earn tips from passengers. Requiring the skycaps to pay this money over to United effectively requires them to divert a portion of their wages back the employer.[6]  In enacting the ADA, Congress surely did not intend to permit airlines to generate revenue by interfering with workers' wages in violation of state employee protection laws, or to preempt the Plaintiffs in this case from recovering for their lost tip income.

---

[6]  Both federal and Massachusetts law recognize that tip income constitutes wages, as both permit employers to claim a "tip credit" against the minimum wage for tipped employees who meet certain requirements.  See 29 U.S.C. § 203(m); Mass. Gen. L. c. 151 § 7.  In addition, the Massachusetts Tips Law, Mass. Gen. L. c. 149 § 152A, is a wage provision, enforceable through the private right of action applicable to the Massachusetts wage laws, Mass. Gen. L. c. 149 § 150.  The common law claims that Plaintiffs have asserted also address the impact on their income of the charge that United imposes and does not permit the skycaps to keep.

## II. THE PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY THE ADA BECAUSE THEY ONLY TENUOUSLY, REMOTELY AND PERIPHERALLY AFFECT UNITED'S PRICES AND SERVICES.

The ADA preempts state laws that are "related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). The term "related to" is construed to include "[s]tate laws and regulations 'having a connection with or reference to' an air carrier's prices, routes or services'." United Parcel Serv., Inc. v. Flores-Galarza, 318 F.3d 323, 335 (1st Cir. 2003), quoting from Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384 (1992). The ADA preempts a state law "if the law expressly references the air carrier's prices, routes or services, or has a 'forbidden significant effect' upon the same." Id., quoting from Morales, 504 U.S. at 388; accord Buck v. American Airlines, Inc., 476 F.3d 29, 34-35 (1st Cir. 2007) (the ADA "preempts both laws that explicitly refer to an airline's prices and those that have a significant effect upon prices"). The preemptive scope of the ADA "is not unlimited," however. DiFiore v. American Airlines, Inc., 483 F. Supp. 2d. 121, 125 (D. Mass. 2007). State laws that affect prices, routes, and services in only a "tenuous, remote, or peripheral . . . manner" are not preempted, for example. Morales, 540 U.S. at 390.

United argues that the Plaintiffs' claims must be preempted because they affect its prices and services. United claims that the Plaintiffs "explicitly refer to the prices United charges its passengers for curb-side baggage check-in," erroneously maintaining that the "[P]laintiffs seek to eliminate any 'price' for this service."[7] Def. Mem. at 7 (emphasis in original). United also argues that the

---

[7] Note that United's argument concerning the value of its curbside check-in fee implicitly requires that the Court credit a substantive defense, namely that the $2 charge is a lawful fee

12

Plaintiffs' claims are related to its "services," exaggerating this suit as an "attempt to control whether or not, and on what terms, United may offer its curbside baggage service," and an effort to "prohibit [it] from offering curbside baggage service on regular commercial terms." Id. at 7–8. These arguments mischaracterize the nature of the Plaintiffs' suit, which is not to regulate a price charged or service provided by United, but to obtain restitution for tip income that was collected and retained by United in violation of state law. If the Plaintiffs' action has any effect upon United's prices or services at all, that effect is highly attenuated and therefore falls outside the ADA's preemptive scope.

The goal of Plaintiffs' suit is to obtain remittance of the tip income that United improperly collected and retained through noncompliance with the Massachusetts Tips Law and common law. Their claim only "affects" United's prices in the sense that it challenges the *manner* in which United has imposed its $2 curbside check-in charge. <u>Plaintiffs are not claiming that United cannot charge $2 per bag, they are simply claiming that it cannot be charged as a cash-</u>

---

similar to those charged to passengers for ticket cancellations or even "airfares themselves," as opposed to a unlawfully diverted tip. (Def. Mem. 7). The federal court should not credit such substantive defenses over a plaintiff's allegations when evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See Parise v. Delta Airlines, Inc., 141 F.3d 1463, 1466 (11th Cir. 1998) ("[I]t is inappropriate . . . for the court to credit the defendant's proffered non-discriminatory justification for its decision to terminate an employee and use that allegation as a basis to find preemption, thereby potentially depriving the plaintiff of any remedy under either federal or state law"). Instead, the Court must accept the plaintiff's well-pleaded allegations as true. See Buck, 476 F.3d at 32 (reviewing lower court dismissal of a motion to dismiss under Rule 12(b)(6), court must "accept[ ] the plaintiffs' well-pleaded facts as true and indulging all reasonable inferences to their behoof"); De Jesus v. American Airlines, Inc., 532 F. Supp. 2d. 345, 347 (D.P.R. 2007) (reviewing motion to dismiss under Rule 12(b)(6), court "must accept all the non-movant's well-pleaded factual avertment as true and draw all reasonable inferences in [his or her] favor").

<u>only charge to be handed to the skycaps themselves for services for which skycaps have traditionally received tips</u>.[8]

The Plaintiffs are likewise not using state law as a mechanism for controlling United's services. To the extent that their suit affects United's services, that effect is so tangentially related to the Plaintiffs' claims as to fall outside the preemptive scope of the ADA. The Plaintiffs predicate their action on United's violation of the Massachusetts Tips Law. The Massachusetts Tips Law is, "at its core, a wage law." <u>DiFiore</u>, 483 F. Supp. 2d at 126. It requires employers to remit to their employees all service charges, tips, gratuities or fees "that a patron or other consumer would reasonably expect to be given to a service employee." Mass. Gen. L. c. 149, § 152A(a). Thus, the Massachusetts Tips Law is "less invasive than the minimum wage and overtime pay laws" of other states, with which airlines must comply though they "surely affect the bottom line." <u>DiFiore</u>, 483 F. Supp. 2d at 126; see <u>LaRosa v. United Parcel Service, Inc.</u>, 23 F. Supp. 2d 136, 143 (D. Mass. 1998) ("[T]o the extent that there is variation in state anti-discrimination laws, such variation is 'little different from generally applicable tax, environmental, or blue sky laws, which as a general matter are not preempted under the ADA'").

United's argument concerning services essentially boils down to an argument that compliance with state wage laws will "force" it to alter it services. This argument fails for numerous reasons. First, such a result is not necessarily dictated by the outcome of this case, should the Plaintiffs prevail, since United

---

[8] For example, United could charge $2 per bag to passengers when they purchase their tickets, or it could charge passengers $2 per bag for self check-in (for which passengers swipe their credit cards to initiate the self check-in process).

14

could still charge check-in fees but in a manner that preserves the Plaintiffs' tip income.  Second, compliance with state wage laws and the services offered by United share a most attenuated relationship.  If compliance with state wage laws affects airline services to such an extent as to warrant preemption by the ADA, then compliance with any state law, such as tax or environmental laws, would likewise warrant preemption.  The Ninth Circuit rejected an argument much like United's in Californians for Safe and Competitive Dump Truck Transportation.  There, an association of public works contractors who provided transportation-related services on publicly funded projects challenged California's prevailing wage law.  152 F.3d at 1186.  The contractors claimed that complying with the prevailing wage law would drive up its prices and forced to it alter its services "to compensate for lost revenue." Id. at 1189.  The Ninth Circuit rejected this argument, holding that the wage law at issue, although "related to" to prices, routes, and services "in a certain sense," had no more than an "indirect, remote, and tenuous" effect.  Id.

A final, but crucial, flaw in United's argument that the Plaintiffs' claims affect its services revolves around the distinction between passengers and employees.  United analogizes the $2 curbside check-in fee to everything from "meals, on-board entertainment, cancellation fees, or airfares themselves."  (Def. Mem. at 7).  Yet these charges shift United's costs to its passengers, while the $2 charge shifts costs to United's workers.  As the Plaintiffs expect to show in this case, passengers have traditionally tipped skycaps, and $2 per bag fee is within the range of a customary tip.  They also expect to show that passengers

have only minimally tipped skycaps over and above the $2 charge since it was implemented, either because they continue to believe the charge is the tip, or because they are unwilling to pay more than $2 per bag for curbside check-in. Thus, the Plaintiffs' challenge to this charge is not one aimed at United's attempt to shift costs from itself to its passengers. Instead the Plaintiffs' suit challenges the fee as a method of absorbing costs by taking revenue away from United's workers.

### III.   THE PLAINTIFFS' CLAIMS ARE NOT "PREDICATED" UPON UNITED'S NOTICE TO PASSENGERS REGARDING THE BAGGAGE FEE, AND THEREFORE DO NOT FALL WITHIN THE PREEMPTED FIELD OF AIRLINE COMMUNICATIONS.

United argues that Plaintiffs' claims are preempted by the FAA, which governs airline communications with passengers, because they are "predicated" upon its failure to adequately notify its passengers that the curbside check-in fee does not constitute a tip. Def. Mem. at 14-15. Once again, United misconstrues the essence of the Plaintiffs' complaint. The Plaintiffs' claim is not that the content of United's communications to passengers about the $2 charge is unlawful. Instead, Plaintiffs argue that, because of the manner in which the $2 charge is collected (as described above), it would not be possible for United to provide signage that would effectively communicate to passengers that the $2 charge is not a tip or service charge for the skycaps. This is so because, as the evidence showed in DiFiore, signs on the curb cannot effectively communicate to passengers that the $2 charge is not a tip for the skycaps, because of how hectic it is on the curb, because passengers are often in a rush and do not look at the signs, and because many transactions in which skycaps collect the $2 charge

16

occur at the passengers' cars (or cabs), nowhere near the signs. Indeed, the jury's finding in DiFiore that American's $2 charge violated the Massachusetts Tips Law even for the period of time during which the signs stated "gratuity not included" constitutes recognition that it would not be possible for the airlines to provide written notice that the $2 charge is not a tip, in light of the manner in which the $2 charge is collected.

Implied preemption occurs either where the federal regulatory scheme is so comprehensive as to suggest a congressional intent to occupy the field exclusively (so-called field preemption), or where a state law actually conflicts with federal law (conflict preemption). See Stone v. Frontier Airlines, Inc., 256 F. Supp. 2d. 28, 40 (D. Mass. 2002). Under either theory, the proponent of preemption must demonstrate a "clear Congressional intent to preempt." Id., citing Philip Morris v. Harshbarger, 122 F.3d 58, 68 (1st Cir. 1992). Here, United cites numerous regulations and guidelines governing airline communications with passengers and consumers, but misses the purpose and effect of the state law upon which the Plaintiffs' claims are brought. The Massachusetts Tips Law is a "wage law that provides that tips are meant for employees." DiFiore, 483 F. Supp. 2d at 127. Plaintiffs claim that the $2 charge violates this law because of the manner in which it is collected, which makes it so that it would be impossible for United to provide a communication to the passengers that sufficiently explains that the $2 charge is not a tip. Passengers who are in a rush, trying to make their flights, are asked by the skycaps to turn over $2 in cash for each bag, for the same service for which those passengers used to tip the skycaps. All the

17

signage in the world cannot suffice to explain to passengers that the money they are paying, which looks exactly like a tip, is not a tip. This is the basis for Plaintiffs' claims—not the substance of any communications to passengers. As such, United's FAA preemption argument must fail.

## CONCLUSION

The claims in this case seek the restitution of wages that were unlawfully and deceptively directed to and retained by United at the expense of their workers. The suit is brought by workers, a group that Congress did not intend, and which the federal courts have not found, to fall within the preemptive ambit of the ADA. United attempts to paint this action as an attempt to control its prices and services, but in fact it seeks to invoke the preemption doctrine as means of immunizing itself against complying with state employment laws. As in other cases addressing state employment laws, this Court should hold that the Plaintiffs' claims here are not preempted by the ADA and deny United's motion to dismiss in full.

Respectfully submitted,
JOSEPH BROWN, VINCENT McLAREN, PHILIP FIELDS, CARLOS BORGES CARREIRO, PATRICIA SHEA-SCANLON, DHARAM SIAHGAL, ELVIS BUTCHER, LARRY HOLD, SCOTT GORDON, MICHAEL RASHAD, LORENZO WILEY, JAMES BROWN, GERARDO AGUIRRE, KEVIN REAVES, MICHAEL KALINOWSKI,

By their attorneys,

   /s Hillary Schwab
Shannon Liss-Riordan, BBO #640716
Hillary Schwab, BBO #666029
PYLE, ROME, LICHTEN, EHRENBERG
     & LISS-RIORDAN, P.C.
18 Tremont Street, 5th Floor
Boston, MA 02108
(617) 367-7200

Dated:   September 17, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2008, I caused a copy of this document to be served by electronic filing on all counsel of record.

   /s Hillary Schwab
Hillary Schwab, Esq.