UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH BROWN, VINCENT McLAREN, PHILIP FIELDS, CARLOS BORGES CARREIRO, PATRICIA SHEA-SCANLON, DHARAM SIAHGAL, ELVIS BUTCHER, LARRY HOLD, SCOTT GORDON, MICHAEL RASHAD, and all others similarly situated, Plaintiffs, v. UNITED AIR LINES, INC., Defendant. | Civil Action No. 08-10689 NG<br>Leave to file granted on 9/25/08 |

## DEFENDANT'S REPLY MEMORANDUM
## IN SUPPORT OF MOTION TO DISMISS

Defendant United Air Lines, Inc. ("United") respectfully submits this reply memorandum in support of its motion to dismiss the Amended Complaint on federal preemption grounds. As discussed in Section I below, the Airline Deregulation Act of 1978 ("ADA") preempts *all* of plaintiffs' claims because they all "relate to" an airline "service" as well as the "price" of that service. Plaintiffs' contrary arguments—that the ADA applies only to claims brought by particular types of plaintiffs, or that it contains an unwritten "employment law" exception, or that it applies only after a court has conducted a cost-benefit analysis of otherwise preempted state-law claims—are without merit. Moreover, as discussed in Section II, even if the ADA did include an "employment law" exception, it would still preempt plaintiffs' common-law claims (Counts II and III), because those claims do not arise from any employment relationship between United (or its contractors) and these skycaps. Finally, as noted in Section III, plaintiffs offer no response to United's demonstration that plaintiffs' claims, to the extent they would impose

liability on the basis of inadequate communication between United and its passengers, are subject to field preemption under the Federal Aviation Act and its implementing regulations.

## I. THE ADA PREEMPTS PLAINTIFFS' CLAIMS

The ADA preempts any state-law claim—statutory or common-law—that "relate[s] to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). Here, plaintiffs seek to hold United liable for charging passengers a $2 fee for curbside check-in on the theory that passengers might mistakenly believe that this $2 fee is really a tip for skycaps (despite signs making clear that it is not). Plaintiffs do not dispute that curbside check-in is an airline "service" for purposes of the ADA, nor do they dispute that the $2 fee is the "price" of that service. Nonetheless, they claim that state law sharply restricts United's ability to charge *that price* for *this service,* and that their claims somehow escape ADA preemption. No matter how plaintiffs seek to frame these claims, they plainly "relate[] to" both a "price" and a "service" offered by an air carrier, and the ADA therefore preempts them.

### A. The ADA's Applicability Does Not Depend On The Identity Of The Plaintiffs

According to plaintiffs, their claims "cannot be preempted by the ADA" because "courts have held [the ADA] applies to preempt claims by airline *passengers*, not *employees*." Opp. 2 (emphasis added). That assertion is wrong. Research has revealed no case in which a court has ever held that the ADA's preemptive effect depends on the *type of plaintiff* who has brought a claim "relat[ing] to a price, route, or service of an air carrier," and multiple decisions reject that proposition. *See* United Mem. 13 n.8 (citing cases holding that ADA preempts various employee claims). There is good reason for this unanimity in the case law: nothing in the language or purpose of the ADA could support any distinction based on a plaintiff's identity. The "broad pre-emptive purpose" and "sweeping nature" of the ADA's preemption provision, *Morales v. Trans World Airlines*, *Inc.*, 504 U.S. 374, 383-84 (1992), encompass any state-law claim

(statutory or common-law) that either "explicitly refer[s] to" airline prices or services or would have "a significant effect" upon them, *Buck v. American Airlines, Inc.*, 476 F.3d 29, 34-35 (1st Cir. 2007), no matter who raises the claim.[1]

Although plaintiffs cite various decisions upholding specific employee claims against ADA challenges (Opp. 6-7), those decisions turned *not* on the identity of the plaintiffs, but on case-specific findings that the claims at issue did not "explicitly refer to" (or have a "significant effect on") airline services or prices. As discussed below, plaintiffs cannot plausibly rely on those precedents here, because their claims *do* "explicitly refer to" both an airline service (curbside baggage check-in) and the price of that service (the $2 fee).

### B. *Rowe* Precludes Any Argument That The ADA Contains An Implicit "Police Power" Exception

Relying on *DiFiore v. American Airlines, Inc.*, 483 F. Supp. 2d 121 (D. Mass. 2007), plaintiffs next ask this Court to carve out an atextual exception to the plain language of the ADA for state employment-law requirements or, more broadly, any exercise of "a state's traditional police power[]." Opp. 9. Although the *DiFiore* court did appear to follow that approach, 483 F. Supp. 2d at 124, its holding on this point is no longer tenable in light of the Supreme Court's intervening decision in *Rowe v. New Hampshire Motor Transp. Ass'n*, 128 S. Ct. 989 (2008).

---

[1] Plaintiffs note (Opp. 2 n.1) that United no longer charges a $2-per-bag fee for curbside check-in and that plaintiffs seek only restitution for the $2 charges imposed in the past. But the retrospective nature of the relief plaintiffs seek does not alter the preemption analysis: the relevant question remains whether the plaintiffs' theory of liability, applied on a prospective basis, would have an impermissible effect on airline services and fares. *See Buck*, 476 F.3d at 36 (holding that ADA preempts "retrospective relief" as much as "prospective relief" because, among other considerations, "past judgments affect future behavior"); *see also, e.g., Harrington v. Delta Air Lines, Inc.*, Civ. No. 04-12558, 2006 WL 1581752 at *3 (D. Mass. Feb. 21, 2006) (ADA preempts common-law suit for restitution arising from Delta's charges on non-refundable tickets) (copy of decision filed with United's motion papers); *Lehman v. USAIR Grp., Inc.*, 930 F. Supp. 912, 916 (S.D.N.Y. 1996) (ADA preempts common-law conversion and unjust enrichment claims for retroactive refund of state excise tax).

The *Rowe* Court broadly interpreted a parallel preemption provision (for the motor carrier industry) that Congress modeled on the ADA and that the Supreme Court has deemed coextensive with the ADA. *See* United Mem. 12 (discussing *Rowe*); *Air Transport Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008). In particular, the *Rowe* Court found that this preemption provision should be construed broadly in light of the plain statutory language, that it extends well beyond conventional "economic regulation," and that it contains no implicit "police power" exceptions. *See* 128 S. Ct. at 997. That holding forecloses plaintiffs' argument here— that the ADA should be construed to contain an exception for "employment law" actions. United's opening memorandum explains in some detail why *Rowe* precludes reliance on *DiFiore* (*see* United Mem. 11-13), but plaintiffs do not even cite, much less address, *Rowe* in their response. That silence is revealing.

Of course, employment-law claims can survive ADA scrutiny if, unlike plaintiffs' claims here, they do not "explicitly refer to" and would have no "significant effect" upon airline prices or services. *Buck*, 476 F.3d at 34-35. One example is the claim at issue in *Californians for Safe & Competitive Dump Truck Transportation v. Mendonca*, 152 F.3d 1184 (9th Cir. 2001), on which plaintiffs rely (Opp. 15). The Ninth Circuit found no preemption there because it concluded that, even though enforcement of the wage law in question would increase the carrier's overhead expenses, the wage claims did not address, and would have only an "indirect, remote, and tenuous" effect on, any given retail rate or service. *See* 152 F.3d at 1189. Also distinguishable, for the same reason, are the retaliatory-discharge cases that plaintiffs cite (Opp. 6): *e.g., Gary v. Air Group, Inc.*, 397 F.3d 183 (3d Cir. 2005), and *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1259-60 (11th Cir. 2003). In many such cases, claims for reinstatement (or monetary compensation) of an employee who has been subject to retaliatory discharge do not

"explicitly refer to," and would have no "significant effect" on, the services an airline offers to the public or the prices it charges for those services.

The contrast to this case is stark. Plaintiffs' state-law claims *are* explicitly addressed to, and if allowed to proceed would directly restrict, the terms on which United can charge a specific "price" (its $2 fee) for a specific airline "service" (curbside check-in). Unlike typical wage-law claims, which address the relationship between an airline and its employees, plaintiffs' claims speak directly and expressly to the relationship between an airline and its *passengers*—and, in particular, the price that those passengers must pay for a given service. There is thus nothing "indirect," "remote," or "tenuous" in the connection between those claims and that price or that service. This is precisely the type of state-level interference with an air carrier's rates and services that the ADA was enacted to preempt.

C.  **The ADA Preempts State Law Liability Theories That Would Directly Regulate Airline "Prices" And "Services," Not Just Claims That Would Prohibit Such Services Outright**

In an effort to escape the ADA's preemptive effect, plaintiffs have now recast their claims as a "challenge[] [to] the *manner* in which United has imposed its $2 curbside check-in charge." Opp. 13. In particular, plaintiffs would impose what amounts to a strict state-law prohibition on charging cash for this service at curbside. But such claims are every bit as preempted as claims that would amount to a ban on curbside service altogether.

State law requirements that "relate to" airline "prices" or "services" are preempted whether they are characterized as outright prohibitions of airline practices or merely as regulation of those practices. And such requirements are *categorically* preempted, no matter what burdens they place on airlines and no matter what public policy objectives they may advance. After determining that a requirement "relates to" an airline price or service, courts do not apply a balancing test to determine whether the supposed policy benefits of the requirement

outweigh the burden that it would impose. For example, in both *Rowe* and *Cuomo*, the Supreme Court and the Second Circuit invalidated state-law requirements that impermissibly "related to" carriers' services in the sense that they forced carriers to provide those services in one way and not another. In each case, even though the defenders claimed that these requirements promoted important social objectives without imposing an undue burden on the carriers, the courts deemed those arguments irrelevant to the preemption analysis—and noted that the resolution of such policy disputes belongs exclusively to the federal government, not with each of the 50 states. *Rowe*, 128 S. Ct. at 996 ("patchwork of state service-determining laws, rules, and regulations" is "inconsistent" with Congress's deregulation goal); *Cuomo*, 520 F.3d at 223-224 (same).

In any event, even if policy concerns were relevant to the preemption analysis, plaintiffs' proposed state-law regulation of the "manner" in which airlines collect the charge imposed for curbside check-in would make no sense as a policy matter. Plaintiffs would apparently require each airline, if it charges any fee, to force passengers to choose *when they book their flights* whether they will use the curbside check-in service when they arrive at the airport days, weeks, or months later. *See* Opp. 14 n.8. Because many passengers do not decide until the moment of arrival whether they want to use curbside check-in, this approach would severely impair consumer choice and, if accepted, could cause airlines to discontinue the service altogether. Alternatively, although plaintiffs are unclear on this point, they appear to argue that airlines should install thousands of credit-card readers at curbside for the sole purpose of avoiding confusion about whether any cash payment is a tip. *See id.* (referring to the use of "credit cards" for "self check-in," presumably at curbside). This proposal would force airlines to incur massive capital expenditures for no sound reason.

Again, this Court need not rule on the policy merits of such proposals in order to grant this motion to dismiss. Even if plaintiffs' policy arguments made sense, which they do not, they would be irrelevant to the preemption analysis, because a state-law requirement that "relates to" an airline "price" or "service" is preempted *whether or not it has policy merit*.

## II. EVEN IF THE ADA CONTAINED AN UNWRITTEN "EMPLOYMENT LAW" EXCEPTION, IT WOULD STILL PREEMPT PLAINTIFFS' COMMON-LAW CLAIMS

Plaintiffs' principal refrain is that the ADA does not preempt state-law theories of liability that seek to "vindicat[e] . . . airline workers' *wage rights*," which plaintiffs characterize as "the foundation of this suit." Opp. 8 (emphasis added). As discussed above, the ADA contains no "wage rights" or "employment law" exception, and it therefore preempts all of plaintiffs' claims. Nonetheless, even if the ADA *did* contain such an exception, the ADA would still preempt plaintiffs' common-law claims for tortious interference with contractual relations (Count II of the Amended Complaint) and "unjust enrichment/quantum meruit" (Count III), because those claims do not logically relate to any alleged "wage"-related obligation United or its contractor might have to skycaps.

Unlike plaintiffs' claim under the Massachusetts Tips Law (Count I), these common-law claims do not assert that United (or its contractor) has violated any employment obligation to skycaps.[2] Instead, these claims assert that United has unlawfully deprived skycaps of an opportunity to profit from their own *independent relationship with passengers*. Specifically, Count II alleges that United has "unlawful[ly] interfere[d] with the implied contractual and/or advantageous relationship that exists between skycaps and Defendant's customers." Amended

---

[2] Although the analysis in this section may not apply to the Tips Law claims, those claims are preempted for the more general reason that the ADA contains no employment law exception at all. Moreover, the Tips Law claims are also invalid on the state law grounds discussed in United's opening memorandum (at 10 n.6).

Compl. at 8. And Count III alleges that United's receipt of a $2 charge "constitutes unjust enrichment" and that plaintiffs are "entitled to restitution" of that charge "under the related common law doctrine of *quantum meruit*. *Id.* Although this theory of unjust enrichment is obscure,[3] plaintiffs seem to be arguing that "customers have routinely mistaken the [$2] charge for the skycaps' tip," and "United has knowingly profited off of this misunderstanding, which has redirected to United the cash that customers have been willing to pay directly to skycaps." Pls.' Mot. for Class Cert. 3.

Again, whatever their merit, these are not claims that United has violated its own employment obligations to pay skycaps *wages*. They are instead claims that United came between skycaps and customers who intended to pay them *tips*. Thus, even if plaintiffs' argument for an employment-law exception to the ADA had merit, which it does not, that argument could not logically preserve their common-law claims from ADA preemption. *See generally Illinois Corporate Travel, Inc. v. American Airlines, Inc.*, 889 F.2d 751, 754-55 (7th Cir. 1989) (ADA preempts travel agents' claim that airline tortiously interfered with agents' relationships with passengers).

### III. PLAINTIFFS' CLAIMS ARE INDEPENDENTLY PREEMPTED BY THE FAA TO THE EXTENT THEY ADDRESS UNITED'S COMMUNICATIONS WITH PASSENGERS

The Amended Complaint claims that United should be held liable under state law for supposed inadequacies in its notification to passengers that the $2 charge United imposed for curbside check-in was not a tip. *See* Amended Compl. ¶ 2 (alleging that United is liable for "not adequately notifying customers in writing that the charge is not a tip for the skycaps"); *id.* ¶ 30

---

[3]  Notably, the *DiFiore* court (without opinion) granted the defendant's motion for summary judgment with respect to a parallel unjust enrichment claim brought by the same counsel. (*See* 07-cv-10070 (D. Mass) docket entries on Sept. 11, 2007, Sept. 12, 2007, and Jan. 9, 2008.)

("United has not satisfied the requirements of the Massachusetts Tips Law to adequately notify customers in writing that the charge is not a tip for the skycaps."). As United has explained (Mem. 13-16), this theory of liability is preempted not just by the ADA, but by the Federal Aviation Act and its implementing regulations, which comprehensively occupy the field of airline communications with passengers. In their response, plaintiffs do not disagree with that legal proposition. Instead, they now disavow the communications-based theory of liability set forth in their Amended Complaint and argue, more broadly, that United should be held liable no matter how prominently and clearly it told passengers that the curbside check-in fee was not a tip, on the theory that "it would be *impossible* for United to provide a communication to the passengers that sufficiently explains that the $2 charge is not a tip." Opp. 17 (emphasis added).

This about-face underscores two points about plaintiffs' case. First, their theory of liability constitutes an extremely aggressive, direct assault on each airline's ability to offer curbside check-in service on commercial terms of its choice. Second, plaintiffs have now waived any theory of liability that relies on supposedly inadequate communications with passengers, because they have failed to respond to, much less rebut, United's observation that the theory clearly articulated in their complaint is subject to FAA field preemption.

## CONCLUSION

For the reasons described in United's opening memorandum and above, United respectfully requests that this Court dismiss the Amended Complaint in its entirety.

Respectfully submitted,

UNITED AIR LINES, INC.
By its Attorneys,

 /s/ Brigitte M. Duffy
Brigitte M. Duffy (BBO # 565724)
C.J. Eaton (BBO # 660726)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Telecopier:    (617) 946-4801

Bruce H. Rabinovitz (admitted *pro hac vice*)
Jonathan E. Nuechterlein (admitted *pro hac vice*)
Rachel Z. Stutz (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE and DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC  20006

DATED:  October 10, 2008

---

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), including counsel for Plaintiffs, Shannon Liss-Riordan, Pyle, Rome, Lichten, Ehrenberg, & Liss-Riordan, 18 Tremont Street, Suite 500, Boston, MA 02109, on October 10, 2008.

/s/ Brigitte M. Duffy
Brigitte M. Duffy