UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH BROWN, VINCENT MCLAREN, PHILIP FIELDS, CARLOS BORGES CARREIRO, PATRICIA SHEA-SCANLON, DHARAM SAIHGAL, ELVIS BUTCHER, LARRY HOLT, SCOTT GORDON, MICHAEL RASHAD, LORENZO WILEY, JAMES BROWN, GERARDO AGUIRRE, KEVIN REAVES, MICHAEL KALINOWSKI, and all others similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>UNITED AIR LINES, INC.,<br><br>            Defendant. | CIVIL ACTION NO. 08-CV-10689-NG |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR RECONSIDERATION OF,
OR, IN THE ALTERNATIVE, INTERLOCUTORY APPEAL FROM,
THE ORDER DENYING DEFENDANT'S MOTION TO DISMISS,
<u>AND TO STAY PROCEEDINGS</u>**

Pursuant to Local Rule 7.1, Defendant United Air Lines, Inc. ("United") respectfully moves for reconsideration of this Court's March 26, 2009 Order denying United's motion to dismiss ("*Order*"). For the reasons discussed below, this Court should dismiss plaintiffs' claims on the ground that they are preempted by federal law. In the alternative, United respectfully requests that the Court certify its *Order* as appropriate for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Whether plaintiffs' claims are preempted presents a paradigmatic issue for interlocutory appeal: (1) preemption is a purely legal issue that controls the outcome of this case; (2) there are substantial grounds for disagreement as to whether this Court correctly construed

the law; and (3) immediate appellate review is likely to result in termination of this action, thereby eliminating the need for protracted and resource-intensive litigation.

## BACKGROUND

This purported class action arises out of United's 2005 decision to impose a $2 per-bag charge on passengers who make use of curbside baggage service. According to the amended complaint, the fifteen named plaintiffs are skycaps (employed either by United or a third-party contractor) who allege that United's imposition of this fee caused passengers to tip them less. Plaintiffs contend that this fee harmed them because, even when fully apprised that this $2 charge is not a tip, "far fewer passengers will give voluntary tips in addition to paying this charge." Compl. ¶ 23; *see also* note 2, *infra* (noting plaintiffs' abandonment of alternative theory that United inadequately notified customers that the charge was not a tip).

Plaintiffs assert various causes of action, each of which arises under state law. On behalf of all named plaintiffs, the amended complaint alleges that United's charge "constitutes unlawful interference with the implied contractual and/or advantageous relationship that exists between skycaps and Defendant's customers, under the common law of the various states in which the charge . . . has been instituted" (Count II) and "constitutes unjust enrichment under the common law of the various states in which the $2 charge . . . has been instituted" (Count III). On behalf of the Massachusetts skycaps, the amended complaint alleges that United has violated the Massachusetts Tips Law (Compl. ¶¶ 2, 15; Count I), which provides in relevant part: "[i]f an employer or person submits a bill, invoice or charge to a patron or other person that imposes a service charge or tip, the total proceeds of that service charge or tip shall be remitted only to the . . . service employees . . . in proportion to the service provided by those employees." Mass.

Gen. Laws ch. 149, § 152A(d).[1] Finally, as relief, plaintiffs seek (among other things) restitution for the $2 per-bag charge collected since February 1, 2006; restitution for all wages, tips, and gratuities allegedly lost as a result of that charge since February 1, 2006; a statutory trebling of all damages for the Massachusetts skycaps under the Tips Law; and "[a]n injunction ordering Defendant to cease its violations of the law as described here" (Compl. ¶¶ 7-8), apparently by banning United from charging and retaining any fee specific to curbside check-in.

On August 13, 2008, United moved to dismiss the amended complaint on federal preemption grounds. United relied primarily on the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 41713(b)(1), which vests exclusive jurisdiction in the federal government to regulate most aspects of air travel and expressly preempts any state-law claim that "relate[s] to a price, route, or service of an air carrier."[2] Here, United argued, the ADA preempts plaintiffs' claims in two respects. First, those claims would compel United to lower its price for curbside baggage handling from $2 to $0—or, if it imposes any charge, to act as a mere collection agent for skycap tips—on the theory that "far fewer passengers will voluntarily tip in addition to paying this charge." Compl. ¶ 1. As such, United argued, those claims violate the ADA's prohibition on

---

[1] For these purposes, the Tips Law defines a "service charge" as "a fee charged by an employer to a patron in lieu of a tip to any . . . service employee . . . , including any fee designated as a service charge, tip, gratuity, or a fee that a patron or other consumer would reasonably expect to be given to a . . . service employee . . . in lieu of, or in addition to, a tip." *Id.* § 152A(a).

[2] United also argued in the alternative that field-preemption principles independently preempt plaintiffs' Tips Law claims to the extent they would hold United liable under state law for supposed inadequacies in its notification to passengers that the $2 charge was not a tip. *See* Mem. in Supp. of Mot. to Dismiss at 13-16. In their opposition to the motion to dismiss, plaintiffs disavowed any communications-based theory of liability and argued, more broadly, that United should be held liable no matter how prominently and clearly it told passengers that the curbside check-in fee was not a tip. Opp. 17. As United explained in reply (at 9), plaintiffs thereby waived any theory of liability that relies on supposedly inadequate communications with passengers. This Court's order denying United's motion to dismiss thus did not resolve United's field-preemption defense on the merits.

state-law theories of liability "related to a *price*" charged by an air carrier. 49 U.S.C. § 41713(b)(1). Second, United argued that the claims are also "related to a . . . *service*" of an air carrier because they seek to control whether or not, and on what terms, United can charge for its curbside baggage service if it does not include that service within basic ticket prices. *Id.*

United acknowledged that the court in *DiFiore v. American Airlines, Inc.*, 483 F. Supp. 2d 121 (D. Mass. 2007), had rejected a similar preemption challenge on the ground that the ADA contains an implicit exception for "areas of traditional state regulation such as employment law." *Id.* at 126. But United argued that *DiFiore*'s holding on this point was inconsistent with the Supreme Court's subsequent decision in *Rowe v. New Hampshire Motor Transp. Ass'n*, 128 S. Ct. 989, 994-995 (2008), which holds that the ADA contains no such exception, and with the First Circuit's decision in *Buck v. American Airlines, Inc.*, 476 F.3d 29 (1st Cir. 2007), which affirms that state-law claims are preempted if they "explicitly refer to an airline's prices." *Id.* at 34. United further argued that the "employment law" cases on which the *DiFiore* court relied were inapposite because they all focused on the relationship between a carrier and *its employees* rather than, as here, the relationship between a carrier and *its passengers.*

On March 26, 2009, this Court entered a summary electronic order denying United's motion to dismiss "on the authority of *DiFiore.*" The Court issued no opinion and thus did not explain why it had rejected United's reasons for concluding that *DiFiore* was incorrectly decided and inconsistent with the Supreme Court's subsequent decision in *Rowe*.

## ARGUMENT

I.      **The Court Should Reconsider Its *Order* Rejecting United's Preemption Defense.**

United respectfully submits that this Court was mistaken in concluding that plaintiffs' claims are not preempted by the ADA. For the reasons discussed below, United requests that the Court reconsider its *Order* and grant United's motion to dismiss.

    A.      **The *DiFiore* Decision Is Inconsistent With *Rowe* And *Altria*.**

The *DiFiore* court's holding rested on a now-foreclosed premise that, even in the ADA context, there is a "heightened presumption against preemption in areas of traditional state regulation" such as "employment law." 483 F. Supp. 2d at 126. That holding cannot survive the Supreme Court's subsequent determination in *Rowe* that there *is no* "traditional state regulation" exception to the ADA's express preemption provision. *See* 128 S. Ct. at 996-97. In *Rowe*, Maine had subjected motor carriers to certain recipient-verification and other regulations designed to keep tobacco products out of the hands of children. The Supreme Court held that these regulations violated the preemption provision in the ADA's motor-carrier counterpart—a materially indistinguishable provision that Congress modeled on the ADA, and which the *Rowe* Court interpreted in light of *Morales*[3] and subsequent ADA cases. The Court rejected the state's argument that Congress had enacted this preemption provision primarily to reach "state 'economic' regulation" rather than traditional police-power concerns such as "protecting . . . citizens' public health." *Id.* at 997; *accord Air Trans. Ass'n of Am. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008).

As the *Rowe* Court explained, Congress "declined to insert the term 'economic' into the operative language"; the operative language likewise "says nothing about a public health

---

[3]      *Morales v. Trans World Airlines*, 504 U.S. 374 (1992).

exception"; and the preemption provision should thus be construed to apply broadly to *all* state laws "with a 'significant impact' on carrier rates, routes, or services." *Rowe*, 128 S. Ct. at 997 (quoting *Morales*, 504 U.S. at 390) (emphasis omitted). The ADA's preemption provision likewise contains no "employment law" exception, and *Rowe* precludes reading one into the text.

If there had been any doubt about the unqualified breadth of the ADA's preemption provision, the Supreme Court dispelled it just several months ago in *Altria Group, Inc. v. Good*, 129 S. Ct. 538 (2008). In *Altria*, the Court rejected a preemption defense under a different federal scheme—the Federal Cigarette Labeling and Advertising Act ("Labeling Act")—to state-law claims of fraudulent misrepresentation. In so doing, the Court distinguished and reaffirmed its prior decisions holding that the ADA *did* preempt similar state-law claims. As the Court explained, the ADA's "pre-emption provision [is] much broader than the Labeling Act's," and the "unusual breadth" of the ADA's preemption language "indicates Congress's intent to pre-empt a large area of state law." *Id.* at 548 (citing *Rowe*, *Morales*, and *American Airlines v. Wolens*, 513 U.S. 219 (1995)). As *Rowe* confirms, that "large area of state law" preempted by the ADA includes what the *DiFiore* court described as "areas of traditional state regulation" (483 F. Supp. 2d at 126), such as "public health" (*Rowe*, 128 S. Ct. at 997) and, as here, employment law.

B.  **The *DiFiore* Decision Is Inconsistent With *Buck*.**

The *DiFiore* decision also contradicts the First Circuit's nearly contemporaneous holding in *Buck v. American Airlines, Inc.*, 476 F.3d 29 (1st Cir. 2007).[4] In *Buck*, the First Circuit held that the ADA preempts not just state-law theories of liability that would "have a significant effect upon prices," but also those that "explicitly *refer to* an airline's prices." *Id.* at 34-35

---

[4]  The district court decided *DiFiore* in April 2007, two months after the First Circuit decided *Buck*, and it did not cite *Buck*.

- 6 -

(emphasis added).  Here, plaintiffs' claims indisputably do "refer to" an airline's prices (as well as its "services") because they would predicate liability on an airline's decision to impose a $2 fee for the service of curbside baggage check-in.

In that respect, these claims are worlds apart from the more typical employment-law claims upheld in the cases on which the *DiFiore* court relied.  *See* 483 F. Supp. 2d at 125-26.  The claims in those cases did *not* "explicitly refer to" an airline's prices because they focused entirely on the relationship between a carrier and *its employees*—for example, by enforcing nondiscrimination rules or minimum wage requirements.[5]  The claims thus could have been preempted only if they had a "significant" (but indirect) "effect" on airline prices.  And they were generally deemed not to have had such an effect, because the challenged practice (*e.g.*, low wage levels) related to just one component of an airline's overhead costs, and the requested remedy was found to have had only an indirect and attenuated effect on the prices the airline charged its passengers.  In contrast, plaintiffs here *directly* challenge the "price" of an airline "service" and target the relationship a carrier has formed with its *passengers* (as opposed to its employees).  As discussed, this type of state-law claim is preempted because it "explicitly *refer[s]* to an airline's prices," *Buck*, 476 F.3d at 34-35 (emphasis added), and thus could hardly be more "related to a price . . . or service of an air carrier," 49 U.S.C. § 41713(b)(1).

Indeed, preemption here follows *a fortiori* from the First Circuit's holding in *Buck*, because in that case the First Circuit found ADA preemption of state-law claims that were *less* directly "related" to airline "prices" and "services" than those asserted here.  In *Buck*, the plaintiffs had brought various state-law causes of action based on allegations that, when

---

[5] *See, e.g.*, *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184 (9th Cir. 1998) (prevailing wage laws).  Even in those types of cases, courts have found ADA preemption of employment-law causes of action.  *See* United Mot. to Dismiss at 13 n.8.

passengers canceled their nonrefundable tickets, the defendant airlines wrongfully retained government-imposed fees and taxes collected at the time of the ticket purchase. 476 F.3d at 31. The First Circuit held that, even though these state-law claims were not directed at the underlying *airline*-imposed charges, they "cannot survive the ADA's broad preemptive sweep." *Id.* at 34. The court reasoned that, among other considerations, holding the airlines liable for failing to return the government-imposed surcharges would ultimately affect the airline's own base fares, given that airlines take such surcharges into account in setting those fares. *Id.* at 35-36. A finding of preemption follows even more strongly here, because the effect of plaintiffs' claims on United's prices is not indirect: plaintiffs wish to affect (indeed eliminate) the curbside baggage charges *directly*. Thus, it is quite likely that the First Circuit would disagree with the *DiFiore* court's treatment of this issue and agree that a finding of ADA preemption is at least as warranted here as it was in *Buck*.

For all of these reasons, this Court should reconsider its *Order* and grant United's motion to dismiss.

## II. If This Court Declines To Reconsider Its Decision, The *Order* Should Be Certified For Interlocutory Appeal Pursuant To 28 U.S.C. § 1292(b).

If the Court adheres to its ruling that plaintiffs' claims are not preempted by the ADA, United respectfully requests that the Court certify its *Order* for interlocutory appeal under 28 U.S.C. § 1292(b). That provision states that this Court may certify an order for interlocutory appeal when it finds that (1) "[the] order involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." All three statutory criteria are clearly satisfied here.

*First*, the Court's *Order* decided a controlling question of law. The issue to be certified is the preemptive scope of the ADA, which is a matter of statutory interpretation and a pure question of law. *See, e.g.*, *United States v. Rhode Island Insurers' Insolvency Fund*, 80 F.3d 616, 619 (1st Cir. 1996) ("[A] federal preemption ruling presents a pure question of law"); 19 James Wm. Moore, *Moore's Federal Practice* § 203.31[2] (3d ed. 2005) (a "question of law" for purposes of Section 1292(b) includes the "meaning of a statutory or constitutional provision"). As a court in this district noted when certifying a preemption issue under Section 1292(b), "the preemption issue [is] a legal question able to be answered without discovery or proof of a factual predicate beyond the pleadings." *Philip Morris Inc. v. Harshbarger*, 957 F. Supp. 327, 329 (D. Mass. 1997), *aff'd* 122 F.3d 58 (1st Cir. 1997) (accepting interlocutory review).

A question of law is "controlling" for purposes of Section 1292(b) if reversal of the district court's legal conclusion would end the litigation. *See, e.g.*, *Harshbarger*, 957 F. Supp. at 330 ("'[A] question of law is "controlling" if reversal of the district court's order would terminate the action.'") (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990)).[6] That is the case here. If the First Circuit were to reverse this Court's ruling that the ADA does not preempt plaintiffs' claims, this entire proceeding would come to an end. Accordingly, the preemption issue is a "controlling question of law" within the meaning of Section 1292(b). *See* 19 *Moore's Federal Practice* § 203.31[2] ("Controlling questions of law that fall within this category of dispositive issues include . . . the question of whether a defense that will defeat the claim is available." ).

---

[6]  Although a question of law clearly is "controlling" if reversal of the district court's order would end the litigation, resolution of an issue need not necessarily terminate an action in order to be "controlling." *See, e.g.*, 19 *Moore's Federal Practice* § 203.31[2] (the phrase "controlling question of law . . . has a much broader meaning in the context of § 1292(b)").

*Second*, there is "substantial ground for difference of opinion" concerning whether the ADA preempts the claims at issue here. This Court relied on *DiFiore*, which held that the ADA contains an unwritten "employment law" exception that preserves state-law claims that "relate[] to" both a "price" charged by and a "service" offered by an interstate air carrier. 483 F. Supp. 2d at 126; 49 U.S.C. § 41713(b)(1). As discussed above, however, this conclusion is inconsistent with the Supreme Court's decisions in *Rowe* and *Altria* and with the First Circuit's decision in *Buck*. Given the inconsistency in these decisions, interlocutory review is appropriate. *See, e.g.*, *Muniz v. Sabol*, 517 F.3d 29, 32 (1st Cir. 2008) (granting interlocutory appeal where the decision to be reviewed conflicted with other district court decisions).

*Finally*, an interlocutory appeal from the *Order* is likely to "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). If the First Circuit determines on appeal that the ADA preempts plaintiffs' claims, this litigation would end because plaintiffs' claims would be precluded as a matter of law. Accordingly, this is the paradigmatic case where an immediate appeal will advance the ultimate termination of the litigation. *See* 16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3930, at 423 (2d ed. 1996). An immediate interlocutory appeal would also spare the parties, and this Court, from the considerable waste of time and resources that would result if this case were to proceed to trial and the First Circuit were then to conclude that plaintiffs' claims are preempted. *Harshbarger*, 957 F. Supp. at 330 ("[I]f this Court's decision of the preemption issue was in error, it would be wasteful of judicial, as well as party, resources to litigate to completion all the other claims before finding out that the litigation was unnecessary.").

For all of these reasons, this case is similar to others from this circuit where courts have concluded that "preemption is an issue naturally appropriate for interlocutory appeal." *Id.* (citing

First Circuit decisions); *see also Schafer v. American Cyanamid Co.*, 20 F.3d 1, 2-3 (1994); *Greenwood Trust Co. v. Massachusetts*, 971 F.2d 818, 821 (1st Cir. 1992); *Palmer v. Liggett Group, Inc.*, 825 F.2d 620, 622 (1st Cir. 1987); *see also Fayard v. Northeast Vehicle Servs., LLC*, 533 F.3d 42, 45 (1st Cir. 2008).

## CONCLUSION

United respectfully asks this Court to reconsider its *Order* and grant United's motion to dismiss. In the alternative, United requests that the Court certify its *Order* for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Specifically, as required by Section 1292(b), the Court should amend its ruling to state in writing that the *Order* "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." In addition, United respectfully requests that the Court stay the proceedings pending the final resolution of Defendant's Motion to Dismiss.

Respectfully submitted,

UNITED AIR LINES, INC.
By its Attorneys,

 /s/ C.J. Eaton
Brigitte M. Duffy (BBO # 565724)
C.J. Eaton (BBO # 660726)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Telecopier:    (617) 946-4801

Bruce H. Rabinovitz (admitted *pro hac vice*)
Jonathan E. Nuechterlein (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE and DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC  20006

DATED:  April 7, 2009

---

CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2009, a true copy of this document was filed through the Court's ECF system and that counsel for Plaintiffs is a registered user of the ECF system designated to receive Notices of Electronic Filings generated by the ECF system in this matter.

     /s/ C.J. Eaton
C.J. Eaton