## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

JOSEPH BROWN, VINCENT McLAREN,       )
PHILIP FIELDS, CARLOS BORGES          )
CARREIRO, PATRICIA SHEA-SCANLON,      )
DHARAM SIAHGAL, ELVIS BUTCHER,        )          CIV. ACTION NO. 08-10689-NG
LARRY HOLD, SCOTT GORDON,             )
MICHAEL RASHAD, LORENZO WILEY,        )
JAMES BROWN, GERARDO AGUIRRE,         )
KEVIN REAVES, MICHAEL KALINOWSKI,     )
and all others similarly situated,    )
                                      )          LEAVE GRANTED
                  Plaintiffs,         )          JULY 1, 2009
                                      )
        v.                            )
                                      )
UNITED AIR LINES, INC.,               )
                                      )
                  Defendant.          )
_____ )

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Defendant United Air Lines, Inc., ("United") begins its opposition with the premise

that courts do not certify multistate class actions. From that starting point, United devotes

much of its opposition to highlighting alleged differences between state laws, contending

that such purported differences preclude class treatment under Rule 23.  Yet the courts

can, and do, certify multistate class actions in circumstances similar to these.[1]  Indeed, an

---

[1]      See, e.g., Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 292 (1st Cir. 2000) (affirming
certification where exchanges of assets for corporate securities "were governed variously by the laws of
twenty states and three Canadian provinces"); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022-1023 (9th
Cir. 1998) ("[T]he idiosyncratic differences between state consumer protection laws are not sufficiently
substantive to predominate over the shared claims"); In re Relafen Antitrust Litig., 221 F.R.D. 260, 279-88
(D. Mass. 2004) (finding claim of unjust enrichment substantially similar among the states and certifying
multistate class); Steinburg v. Nationwide Mut. Ins. Co., 224 F.R.D. 67, 78-79 (E.D.N.Y. 2004) (certifying
multistate class on plaintiffs' breach of contract claims); Allapattah Serv. Inc., v. Exon Corp., 188 F.R.D.
667 (S.D.Fla.1999) (varying state laws in fraudulent concealment claim deemed manageable); Singer v.
AT&T Corp., 185 F.R.D. 681, 692 (S.D. Fla. 1998) (breach of contract is universally recognized cause of
action; potential application of varying state laws did not preclude class certification); In re Prudential Ins.
Co. of America Sales Practices Litig., 962 F. Supp. 450, 525 (D.N.J. 1997) (state variations in common

examination of United's own briefing and appendix generally belies its arguments that differences in state laws are material, and even if the Court were to find material conflicts between the laws of the states, this case could still properly proceed on a class basis under the laws of Illinois pursuant to <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 792, 818 (1985).

A multistate class is clearly the best means of proceeding with this case. Unless such a class is certified, the vast majority of United skycaps would not be able to pursue the claims alleged here. Plaintiffs seek to represent a class of hundreds of skycaps all of whom challenge the same policy and seek redress for the same injury. Resolution of their claims requires discovery of generalized evidence and evaluation of common questions of law and fact. Contrary to United's arguments concerning the administrative "nightmare" presented by class treatment, the alternative would be to prevent the vast majority of United skycaps from pursuing their claims at all, or require them to file hundreds of individual lawsuits across the country—precisely the sort of outcomes which class certification was designed to prevent. Thus, Plaintiffs' motion for class certification should be granted.

## **ARGUMENT**

### I.    **PLAINTIFFS' COMMON LAW CLAIMS SATISFY THE COMMONALITY PREREQUISITE OF RULE 23(b)(3).**

#### A.    **The Elements Of Tortious Interference Are Essentially Identical Among The States At Issue.**

United attempts to create the impression that claims of tortious interference are fundamentally different from state to state by mischaracterizing the law of those states

---

law claims for fraud, breach of contract, implied obligations of good faith and fair dealing, negligence, and negligent misrepresentation were manageable.)

and underscoring differences that are merely semantic or illusory.  In fact, there are

relatively few differences among the states with respect to this claim, and none are

sufficiently material as to prevent class certification.[2]  A material conflict arises when the

conflict could affect the outcome of a claim.  See Doricent v. American Airlines, Inc.  1993

WL 437670 at *8 (D. Mass. 1993).   In evaluating whether such a conflict exists, courts

"look at how issues are likely to play out in the context of the case to see what individual

issues are likely to arise, and what state law differences are irrelevant and may be

ignored."  In re Pharm. Indus. Average Wholesale Price Litig., 230 F.R.D. 61, 84 (D.

Mass. 2005).  Despite United's protests, none of these considerations weigh against

class treatment here.

　　　　Significantly, the states relevant to this case have, without exception, adopted a

version of the tortious interference claim equivalent to the one set forth in the

Restatement (Second) of Torts.[3]  Section 776B of the Restatement establishes that a

---

[2]　　　　As a threshold matter, United cannot dispute that all of the relevant states recognize some form of tortious interference with prospective business relations, which is the tort Plaintiffs assert here. Contrary to United's claims, the fact that these states also recognize claims for tortious interference with existing contractual or advantageous relationships does create material differences among the states. Instead, it means only that the states recognize different modes of tortious interference.

[3]　　　　See, e.g., Oaksmith v. Brusich, 774 P.2d 191, 197-198 (Alaska 1989); G.M. Ambulance v. Canyon State Ambulance, 739 P.2d 203, 204–205 (Ariz. App. 1987); Della Penna v. Toyota Motor Sales, U.S.A., 902 P.2d 740 (Cal. 1995); Amoco Oil v. Ervin, 908 P.2d 493, 498 (Colo. 1995); Biro v. Hirsch, 771 A.2d 129, 136 (Conn. App. 2001); Gossard v. ADIA Services, Inc., 723 So.2d 182, 186 (Fla. 1998); Sunamerica Fin. v. 260 Peachtree St., 415 S.E.2d 677, 684 (Ga. App. 1992); Roberts Hawaii School Bus v. Laupahoehoe Transp. Co., 982 P.2d 853, 887 (Hawaii 1999); Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Ry. Co., 748 N.E.2d 153, 161 (Ill. 2001); Bradley v. Hall, 720 N.E.2d 747, 751 (Ind. App. 1999); Nesler v. Fisher and Co., Inc., 452 N.W.2d 191, 193, 195, 196 (Iowa 1990); Noller v. GMC Truck & Coach Div., 772 P.2d 271, 276 (1989); K & K Mgmt. v. Lee, 557 A.2d 965, 974, 975, 986 (Md. 1989); South Boston Betterment Trust Corp. v. Boston Redev. Auth., 777 N.E.2d 812, 821 (Mass. 2002); Winiemko v. Valenti, 513 N.W.2d 181, 182, 184 (Mich. App. 1994); EdR.A., Inc. v. Anheuser-Busch, Inc., 556 N.W.2d 567, 567, 570–571 (Minn. App. 1996); Rhodes Eng'g Co., Inc. v. Public Water Supply Dist. No. 1 of Holt County, 128 S.W.3d 550, 566 (Mo. App. 2004); Omaha Min. v. First Nat. Bank of Bellevue, 415 N.W.2d 111, 114 (Neb. 1987); Las Vegas–Tonopah–Reno Stage v. Gray Line, 792 P.2d 386, 388 (Nev. 1990); MacDougall v. Weichert, 677 A.2d 162, 174 (N.J. 1996); Laiso v. Cassetta, 156 A.D.2d 544 (N.Y. Sup. Ct. App. Div. 1989); Gray-Jones v. Jones, 738 N.E.2d 64, 69, 70 (Ohio App. 2000); Gaylord Entm't Co. v. Thompson, 958 P.2d 128, 150 (Okl. 1998); Giordano v. Aerolift, Inc., 818 P.2d 950, 951 (Or.

party "intentionally and improperly interferes with another's prospective contractual relation," and "is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation," where that party "(a) induc[es] or otherwise caus[es] a third person not to enter into or continue the prospective relation or (b) prevent[s] the other from acquiring or continuing the prospective relation." Restatement (Second) of Torts § 766B. Thus, as articulated by the Restatement, all claims for tortious interference consist of four essential elements: (1) the existence a prospective relationship; (2) the defendant's knowledge of the prospective relationship; (3) intentional interference by the defendant with the prospective relationship; and (4) damage to the plaintiff. (See Pls.' Appendix A).

United incorrectly implies that these elements vary significantly from state to state, but a more careful analysis of the laws at issue show otherwise. For example, United claims that Pennsylvania and Nevada only recognize interference with prospective contractual relations, not prospective business or advantageous relations. In fact, those states recognize both. See Stalk v. Mushkin, 199 P.3d 838, 842 (Nev. 2009) (recognizing "intentional interference with a prospective business advantage and contractual relations"); Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212 (3d Cir. 2009) (recognizing tortious interference with "prospective contractual or economic relationship between the plaintiff and a third party"). Additionally, United is incorrect in arguing that Illinois and Florida require plaintiffs to identify each individual with whom they had a prospective business relationship. Those states merely require that plaintiffs

App. 1991); Kelly-Springfield Tire Co. v. D'Ambro, 596 A.2d 867, 871 (Pa. Super. 1991); Southwestern Bell v. John Carlo Texas, 843 S.W.2d 470, 472 (Tex. 1992); Sampson v. Richins, 770 P.2d 998, 1003 (Utah App. 1989), cert. denied 776 P.2d 916 (1989); Maximus v. Lockheed Info. Mgmt. Systs., 493 S.E.2d 375, 378 (Va. 1997); Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Group, Inc., 52 P.3d 30, 34 (Wash. App. 2002).

identify a group of persons with whom plaintiffs claim such a relationship.  See Vulcan
Golf, LLC v. Google Inc., 552 F. Supp. 2d 752, 781-782 (N.D. Ill. 2008) ("As noted by the
plaintiffs, identification of general classes of third parties (here, internet users) can be
sufficient"); Maxi-Taxi of Fla., Inc. v. Lee County Port Auth., 2008 WL 1925088, at *15
(M.D. Fla. 2008) (plaintiffs must allege more than interference "with a relationship
between the plaintiff and the public at large").  Here, Plaintiffs have identified a narrow
class of persons with whom they had a prospective business relationship, i.e., all
individuals who checked their bags with skycaps and paid the $2 fee.  Thus, these issues
do not raise material conflicts.

        United also fails to identify a material conflict by arguing that Georgia possesses a
"unique" requirement that it be a "stranger" to the business relationship.  Rather than
being unique, it is clear that the nature of the defendant's involvement in the business
relationship is merely a component of the universal element that defendant's interference
be improper.[4]  Though some states purport to formulate tests for impropriety with
somewhat differing language, on closer inspection, the standard for proving this element
is uniform among the states and turns largely an examination of "the relations between
the parties."[5]

---

[4]     See, e.g., Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 742 So.2d 381, 385-
386 (Fla. App. 4 Dist. 1999) ("For the interference to be unjustified, the interfering defendant must be a
third party, a stranger to the business relationship."); King v. Sioux City Radiological Group, P.C., 985 F.
Supp. 869, 882 (N.D. Iowa 1997) ("[T]ort of tortious interference with a business advantage is also
premised on the acts of a stranger to the relationship interfering with relations between the plaintiff and
another, **as is shown by the elements of the tort**") (emphasis added); Yaindl v. Ingersoll-Rand Co.
Standard Pump-Aldrich Div., 422 A.2d 611, 622 n.11 (Pa. Super. 1980) ("'[A]bsence of privilege or
justification on the part of the defendant', is merely another way of stating that the defendant's conduct
must be improper").

[5]     For example, the Restatement notes that the question of whether a party's interference is
"improper" requires evaluation of seven factors: "(a) the nature of the actor's conduct, (b) the actor's
motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to
be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the

In addition, United misstates the law when it argues that various states require a unique showing that the defendant acted out of "malice." As the Restatement notes, there are "frequent expressions in judicial opinions that 'malice' is requisite for liability." Restatement § 766 cmt. s. The "context and the course of the decisions make it clear that what is meant is not malice in the sense of ill will but merely 'intentional interference without justification'," however. Id. Significantly, many states—including four states referenced by United—have made this understanding explicit,[6] while others now interpret it in accord with the Restatement as governing situations where the defendant "knows that the interference is certain or substantially certain to occur as a result of his action."[7]

Other alleged conflicts raised by United are simply irrelevant. For example, United argues that a material conflict exists because some states require proof of damage to the business relationship, while others set a higher standard of requiring actual damages. Here, Plaintiffs claim that United redirected their tips to itself by imposing a $2 charge in a way that made it appear to customers to be the skycaps' tip,

---

contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties." Restatement (Second) of Torts § 767.

[6]    See Delloma v. Consol. Coal Co., 996 F.2d 168, 171 (7th Cir. 1993) ("In the context of a suit for tortious interference with a prospective economic relationship, the term 'malicious' does not carry the ordinary meaning of vindictive or malevolent; it means intentionally and without justification"); Ultrasound Imaging Corp. v. American Soc'y of Breast Surgeons, 358 F. Supp. 2d 475, 481 (D. Md. 2005) (interference is improper if done with "unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice)"); Lamorte Burns & Co., Inc. v. Walters, 770 A.2d 1158, 1170 (N.J. 2001) ("Malice is not used here in its literal sense to mean 'ill will'; rather, it means that harm was inflicted intentionally and without justification or excuse"); Daley v. Aetna Life & Cas. Co., 734 A.2d 112, 135 (Conn. 1999) (plaintiff must "demonstrate malice on the part of the defendant, not in the sense of ill will, but 'intentional interference without justification'.").

[7]    See, e.g., Robin v. Bellsouth Adver. & Pub. Co., 471 S.E.2d 294, 296 (Ga. App.1996) (adopting Restatement); Korea Supply Co. v. Lockheed Martin Corp., 63 P.3d 937, 949-950 (Cal. 2003) (agreeing with Restatement on intent element).

and thus their claims satisfy both conditions, rendering any differences irrelevant.[8]  In re

Relafen Antitrust Litig., 221 F.R.D. at 280 n.17 (irrelevant differences in state laws do not

preclude class treatment).  Additionally, while the statutes of limitations in some states are

shorter than those in others, these differences pertain only to calculations of damages,

which should not defeat class certification, and are not relevant to a finding of

commonality and predominance in any event.  As stated in Waste Management Holdings,

as long as a "sufficient constellation of common issues binds class members together,

variations in sources and applications of statutes of limitations will not automatically

foreclose class certification."  208 F.3d at 296.  Here, United's policy of imposing a $2

charge that was presented to passengers as a tip for the skycaps is the essential issue at

the heart of this case.  Simplistic determinations regarding applicable time periods do not

create a conflict that predominates over this question.[9]

---

[8]     At trial, Plaintiffs would seek the proceeds of the $2 bag charges that they each collected during the period in which United imposed this charge on curbside check-in.  This is an amount that can be calculated with fair precision for each class member, and indeed this is the amount of damages that the successful plaintiff skycaps were awarded in DiFiore v. American Airlines.

[9]     However, Plaintiffs recognize that California, Indiana, New York and Texas require that interference with a prospective business relationship be not only improper but independently unlawful or tortious.  See Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1158 (Cal. 2003); Government Payment Serv., Inc. v. Ace Bail Bonds, 854 N.E.2d 1205, 1209 (Ind. App. 2006); Carvel Corp. v. Noonan, 3 N.Y.3d 182, 190 (N.Y. 2004); Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d 711, 726 (Tex. 2001).  Plaintiffs contend that they will be able to demonstrate that the interference alleged here was independently unlawful or tortious under the laws of those states based on the same theory they are using for skycaps in all the states – which is that the $2 per bag charge was misrepresented to passengers as a gratuity for the skycaps.  However, if the Court believes this to be a material distinction in the law of these four states that would make it necessary to do so, it could certify a subclass of skycaps who worked in these four states.

**B.    The Elements Of Unjust Enrichment Are Essentially Identical Among The States At Issue.**

As with tortious interference, the claim of unjust enrichment is virtually identical among the states at issue in this case.[10]  (See Pls.' Appendix B).  Numerous courts and commentators have noted the striking uniformity of unjust enrichment laws across states. See Singer v. AT&T Corp., 185 F.R.D. 681, 692 (S.D. Fla. 1998) (varying state laws do not preclude class certification because "prevailing case law holds that . . . state claims [for] unjust enrichment, are universally recognized causes of action that are materially the same throughout the United States"); In re Terazosin Hydrochloride Antitrust Litig., 220 F.R.D. 672, 697 n.40 (S.D. Fla. 2004) (certifying multistate class of 17 states–including eight at issue here—where "[t]he standards for evaluating each of the various state classes' unjust enrichment claims are virtually identical").  Notably, in Relafen, Judge William Young granted certification to a multistate class on claims for unjust enrichment, which included eight of the states at issue here.  See 221 F.R.D. at 278-280.  There Judge Young analyzed the various states' tests for unjust enrichment and set forth "a core of common elements":  "[1] the plaintiff conferred a benefit upon the defendant, [2] the defendant appreciated or knew of the benefit, and [3] the defendant accepted or retained the benefit under such circumstances as to make non-payment inequitable."  Id. at 279

---

[10]    United's argument that a material conflict exists among the states because certain states require that there be no adequate remedy at law before a plaintiff may pursue an unjust enrichment claim is a red herring.  As Judge Saris ruled in Massachusetts v. Mylan Labs., "[u]njust enrichment is an equitable remedy, and it is a basic doctrine of equity jurisprudence that courts of equity should not act . . .  when the moving party has an adequate remedy at law."  357 F. Supp. 2d 314, 324 (D. Mass. 2005), quoting Morales v. Trans World Airlines, Inc., 504 U.S. 374, 381 (1992).  Thus, the requirement that there be no adequate remedy at law is a fundamental requirement for all claims of unjust enrichment and does not create a material conflict.  Nor is United able to manufacture a material conflict by claiming that Indiana requires that the benefit conferred be "measurable" because the benefit conferred here (i.e. the skycaps' performance of their job duties) is measurable in monetary terms and because United has not pointed to a single case which has turned on a finding of measurability.  Thus, this purported conflict, if it exists at all, is irrelevant.

(citations omitted).  In this case, 27 of the 29 relevant states clearly share the "core of common elements" identified in Relafen.[11]  (See Pls.' Appendix A).  Thus, no material conflicts exist between the states on Plaintiffs' claim for unjust enrichment.

## II. BECAUSE PLAINTIFFS' CLAIMS ARISE FROM A COMPANY-WIDE POLICY ORIGINATING AT UNITED'S HEADQUARTERS IN ILLINOIS, THE LAW OF THAT STATE COULD GOVERN PLAINTIFFS' CLAIMS.

As described above and in Plaintiffs' motion for class certification, the differences among state laws with respect to their common law claims are not material differences that should defeat class certification.  However, even if the Court were to agree with United that the state law differences pose an obstacle to the certification of a multistate class, the Court has another alternative:  it could apply the common law of a single state to Plaintiffs' common law claims.  A logical and permissible choice of a single state's law would be that of Illinois, the state in which United is headquartered and presumably the

---

[11]    As noted by United in its opposition, the courts in the remaining two states, New Jersey and Virginia, have slight differences in the way they have stated the "core" standard with regards to unjust enrichment.  New Jersey and Virginia both require that Plaintiffs demonstrate a reasonable expectation of payment, but this requirement is nothing more than a sub-element of the requirement that Plaintiffs demonstrate that the benefit conferred be "unjust."  See Provident Life & Acc. Ins. Co. v. Waller, 906 F.2d 985, 993-994 (4th Cir. 1990) ("As summarized by a national commentator, three elements encompass the equitable remedy of unjust enrichment . . . the plaintiff must show that (1) he had a reasonable expectation of payment, (2) the defendant should reasonably have expected to pay, or (3) *society's reasonable expectations of person and property would be defeated by nonpayment*") (emphasis added); Associates Commercial Corp. v. Wallia, 511 A.2d 709, 716 (N.J. Super. A.D. 1986) ("[T]he real question is whether plaintiff's retention of that benefit without payment therefore would be unjust").

Moreover, while some courts have recognized North Carolina as requiring that the benefit conferred be direct, recent appellate decisions from that state have upheld claims for unjust enrichment in cases in which the plaintiff did not appear to provide a "direct benefit."  See, e.g. Progressive Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 647 S.E.2d 111, 116-117 (N.C. App. 2007) (trial court erred in granting summary judgment against plaintiff insurer on claim for unjust enrichment where plaintiff reimbursed insured for accident, but later alleged that defendant insurance company should have paid for accident instead of plaintiff); James River Equip., Inc. v. Tharpe's Excavating, Inc., 634 S.E.2d 548 (N.C. App. 2006) (plaintiff stated prima facie claim for quantum meruit against general contractor where plaintiff rented equipment to subcontractor to perform work for general contractor and plaintiff was not paid by subcontractor).  Even if this were not the case, however, the requirement that the benefit be "direct" would be irrelevant here because the benefit alleged to have been conferred (i.e., the skycaps' labor) is direct.

state in which United formulated its policy of imposing the $2 per bag charge.[12]  Where

the claims of a proposed multistate class have "significant contact or significant

aggregation of contacts" with a particular state, courts may apply the law of that state to

the claims of the entire class, even when the claims involve the common law of various

states.[13]  Shutts, 472 U.S. at 818, quoting Allstate Ins. Co. v. Hague, 449 U.S. 302, 312-

13 (1981).  In order for a court to apply the law of a single state to a multistate class, the

claims of a class must have "significant contact or a significant aggregation of contacts."

Id.  Once this inquiry is satisfied, the law of a single state may properly be applied to all

class claims using the appropriate choice of law rules.  See In re Seagate Tech. Sec.

Litig., 115 F.R.D. at 271 -272 (applying both significant contacts test and California choice

of law rules).

### A.    There Are Sufficient Contacts Between Plaintiffs' Claims And Illinois To Meet The Significant Contacts Test.

Here, there are clearly sufficient contacts between Plaintiffs' claims and the state

of Illinois to satisfy the test described in Shutts.  Under Shutts, choice of law questions

arise "when a dispute implicates the interests of two or more states and application of

each state's law would be consistent with the Full Faith and Credit and Due Process

---

[12]    The parties have not yet conducted discovery in this case pursuant to their Fed. R. Civ. P. 16.1(D) Joint Statement, in which the parties stipulated to postpone discovery until after the resolution of certain pending motions.  (See Docket No. 21 at 2).  If necessary for the Court's analysis, Plaintiffs could take discovery on this issue.

[13]    Significantly, courts have applied the law of one state to a multistate class action based on this significant contacts test.  See In re Heritage Bond Litigation, 2004 WL 1638201, *10 (C.D. Cal. 2004) (applying California law to plaintiffs' common law claims in a multi-state class action where corporate defendant was headquartered in California); In re Seagate Techs. Sec. Litig., 115 F.R.D. 264, 271-272 (N.D. Cal. 1987) (applying California law to common law fraud claims in multi-state class action where corporate defendant was headquartered in California); Gruber v. Price Waterhouse, 117 F.R.D. 75, 81-82 (E.D. Pa. 1987) (applying Pennsylvania law to common law fraud claims in multi-state class action); In re Atlantic Fin. Fed. Sec. Litig., 1990 WL 188927, at *6 (E.D. Pa. 1990) (applying Pennsylvania negligent misrepresentation law to multi-state class action where defendant corporation maintained "principle offices" in Pennsylvania).

Clauses of he Constitution."  <u>Simon v. Phillip Morris, Inc.</u>, 124 F. Supp. 2d 46, 53 (E.D.N.Y. 2000) (quotations and citations omitted).  These constitutional requirements are "modest" and are "met if each state whose law is sought to be applied has significant contacts or significant aggregation of contacts creating state interests . . . . "  <u>Id.</u>  Notably, a corporate defendant's ties to the state in which it is headquartered have been considered sufficient contacts for purposes of the <u>Shutts</u> test.  <u>See id.</u> at 70 (New York law properly applied where defendants "both have their principle places of business in New York City, and both of these companies have been headquartered in New York for several years"); <u>In re ORFA Sec. Litig.</u>, 654 F. Supp. 1449, 1463 (D.N.J. 1987) (defendants had their principle place of business in New Jersey); <u>In re Seagate Tech. Sec. Litig.</u>, 115 F.R.D. at 272 (defendant company was headquartered in California and California had an interest in the improper acts of its residents).

United's principal offices are located in Elk Grove Township and Chicago, Illinois. (<u>See</u> United Airlines Corporate Filing and Related Articles, attached as "Exhibit A"). Accordingly, at all times relevant to this action, United's corporate operation was headquartered exclusively in Illinois.  The decision to implement the $2 charge (including decisions regarding the manner in which the charge was implemented, collected and retained) presumably resulted from decisions made at United's corporate headquarters.[14] Beyond these contacts, Illinois has a strong interest in governing the conduct of one of its largest corporate citizens.  <u>See</u> <u>In re Aircrash Disaster Near Chicago, Ill. on May 25, 1979</u>, 644 F.2d 594, 622 (7th Cir. 1981) ("Illinois . . . has an important interest in the application of its law because it is a state in which both the policies of protection of airline

---

[14]    Again, if the Court deemed it necessary, Plaintiffs could take discovery on this question to confirm this assumption.

corporations and deterrence of misconduct are peculiarly important").  Thus, the contacts between Plaintiffs' claims and Illinois are sufficient to meet the "significant contact or significant aggregation of contacts" test of <u>Shutts</u>.

**B.    Illinois Law Should Be Applied To Plaintiffs' Claims Under Massachusetts Choice Of Law Rules.**

Another basis for applying Illinois law to the putative multistate class is an analysis of the choice of law rules of Massachusetts.  As this case is a diversity matter, the Court should apply the choice of law rules of the forum state, Massachusetts.  <u>See</u> <u>Klaxon Co. v. Stentor Electric Mfg.</u>, 313 U.S. 487, 496 (1941).  Massachusetts courts "take a flexible interest-based approach to choice of law issues."  <u>Value Partners S.A. v. Bain & Co., Inc.</u>, 245 F. Supp. 2d 269, 276 (D.Mass. 2003).  This approach "[d]raws on both the specific and general factors listed in the Restatement," and, in regards to tort cases, specifically evaluates the place of the conduct, the domicile of the parties, and the policies of the forum.  <u>Id.</u>  Notably the First Circuit observed that application of the Commonwealth's choice of laws rules may be appropriate in determining motions for certification of multistate classes when it denied Plaintiffs' request for interlocutory appeal in <u>DiFiore</u>.  <u>See</u> <u>DiFiore, et al. v. American Airlines, Inc.</u>, Appeal No. 07-8032 (1st Cir. 2007) (plaintiffs raised "significant issues concerning the interplay of Rule 23, ***choice-of-law principles***, and the Class Action Fairness Act of 2005 . . ."), Ex. 1 to Pls.' Class Cert. Mot.

Massachusetts courts emphasize the "most significant relationship" test in determining which state law would apply to tort claims.  <u>See</u> <u>Oxford Global Res., Inc. v. Guerriero</u>, 2003 WL 23112398, at *4 (D. Mass. 2003) ("Absent a choice of law provision, a Massachusetts court would apply a "most significant relationship" test to determine which state's law would apply").  Additionally, choice of law decisions are made in part

based on the interrelated "interstate judicial system's interest in obtaining the most efficient resolution of controversies." World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980).  Applying this test, various courts have held that, in the case of intentional torts, the proper law to apply is the law of the location of the wrongful conduct. As the court noted in Christ v. Cormick:

> The rationale follows that, where there is an action based upon an intentional tort, the punitive element is dominant, and the state finds the conduct wrongful because its people regard it as sinful or offensive to public morals and the conduct, not the injury, is critical for applying the applicable law.

2007 WL 2022053, at *6 (D. Del. 2007); see also Corning Inc. v. SRU Biosys., LLC, 292 F. Supp. 2d 583, 585 (D. Del. 2003) (Delaware law applied to tortious interference claim because, while injury occurred in Massachusetts, the wrongful conduct occurred in Delaware).  Here, Plaintiffs' claims are based on United's imposition of a uniform $2 per bag charge curbside check-in policy that it presumably created in Illinois and imposed nationwide.  Thus, Illinois may have the strongest interest in regulating the conduct challenged in this case.  See Pathe Computer Control Syst. Corp. v. Abbey Holding, Inc., 1990 WL 122345, at *4 (D. Mass. 1990) (choice-of-law favors state that possesses "the greater relationship" with the allegedly tortious acts).  Thus, the law of Illinois should be applied to Plaintiffs' claims.

## III.    PLAINTIFFS' SATISFY THE PREDOMINANCE AND SUPERIORITY REQUIREMENTS OF RULE 23(B).

### A.    Common Issues Of Law And Fact Concerning United's $2 Charge Predominate Over Individual Considerations.

United contends that common issues of law and fact do not predominate in this case because individual considerations would "swamp" any such issues.  Beyond

referencing its preceding arguments against commonality and quoting boilerplate
language concerning the alleged rarity of multistate class actions, however, United makes
no showing of how individual issues predominate.[15]  Thus, United's argument fails not
only because Plaintiffs' common law claims do not substantively vary from state to state
(as discussed in Section I, supra), but because it does not identify how predominance is
not satisfied.

"Rule 23(b)(3) requires merely that common issues predominate, not that all issues
be common to the class."  Smilow v. Southwestern Mobile Bell Sys., Inc., 323 F.3d 32, 39
(1st Cir. 2003).  Thus, as Judge Saris recognized in Pharmaceutical Industries Average
Wholesale Price Litigation, common issues "can be said to predominate" where, as here,
"'*one or more of the central issues in the action are common to the class* . . . .'"  252
F.R.D. at 102, quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal
Practice & Procedure § 1778 (3d ed. 2005) (emphasis added).  In those circumstances, a
national class "action may be considered proper under Rule 23(b)(3) even though other
important matters will have to be tried separately, such as damages or some affirmative
defenses peculiar to some individual class members'."  Id.

Here, the central issue at the heart of this case is a common course of conduct
undertaken by United—namely, its imposition of a $2 charge for each bag checked at
curbside—which similarly affected every member of the putative class.  The impropriety of

---

[15]    United also briefly contends that individualized inquiries concerning damages also preclude a
finding of predominance.  It is well-settled that "the need for individualized damage decisions does not
ordinarily defeat predominance," however.  Tardiff v. Knox County, 365 F.3d 1, 6 (1st Cir. 2004).  Notably,
in Tardiff, the First Circuit affirmed class certification for a case challenging counties' alleged policies
relating to strip searches of jail detainees, even when each individual class member's damages would
turn on the individual's particularized situation (emotional distress, medical bills, lost wages, etc.).  Id.
Similarly, the First Circuit reversed the district court's decision decertifying a class in Smilow, holding that,
"courts generally find the predominance requirement to be satisfied even if individual damages issues
remain."  323 F.3d at 40.  As to all skycaps in this putative national class, the issues of the
implementation of the $2 per bag charge and its resemblance to the skycaps' traditional tip predominate.

United's $2 charge is common to every member of the putative class and is both the

factual and legal premise for this entire class action.  See In re Relafen, 218 F.R.D. at 343

(finding predominance where plaintiffs "allege a 'common course of conduct' having a

'general effect on the market'").  Moreover, Plaintiffs' claims may all be resolved through

common proof, such as evidence concerning United's decision to implement the $2

charge, and how it was implemented and represented to passengers.  See In re Relafen,

218 F.R.D. at 343 (finding predominance where plaintiffs "propose to prove these

common injuries using generalized evidence and methodologies"); George Lussier

Enters., Inc. v. Subaru of New England, Inc., 2001 WL 920060, at *19 (D.N.H. 2001)

(finding predominance in multistate class action where plaintiffs would "offer the same

proof in support of their . . . claims").  Thus, regardless of any minor variances that may

exist between the states on Plaintiffs' claims, those claims will still require evaluation of

identical and generalized evidence.  Predominance is therefore apparent.

**B.    Resolution Of This Case On A Classwide Basis Is The Decidedly Superior Method of Adjudicating Plaintiffs' Claims.**

United contends that a multistate class is not the superior method of resolving this

case because the putative class members may be entitled to different or better remedies

under the laws of their own states.  This argument is unavailing, however, because at

bottom it is nothing more than an argument in favor of duplicative litigation (or more likely,

an argument in favor of very few skycaps being able to pursue these claims at all).  In

order to obtain the relief suggested by United, each skycap would need to file suit on his

or her own behalf, resulting in potentially hundreds of redundant lawsuits.  The class

action mechanism and the superiority requirement in particular were expressly formulated

to prevent such an outcome, however.  See In re Relafen, 231 F.R.D. at 70 ("[T]he

15

requirement of superiority . . . ensures that resolution by class action will 'achieve

economies of time, effort, and expense . . . "), quoting Amchem, 521 U.S. at 615;

Bouchard v. Secretary of Health & Human Servs., 1982 WL 594675, at *5 (D. Mass.

1982) ("[T]he rationale of class actions is the avoidance of unnecessary duplicative

litigation saving both court and litigant time").

Here, a national class action is clearly superior because no more geographically-

limited class may be certified.  Although United employs several hundred skycaps across

the country, the number of skycaps working for United in each of the states at issue is

relatively small and would not satisfy the numerosity requirement of Rule 23(a)(1).  Since

none of these states possess a sufficiently-large or indiscernible pool of skycaps as to

render joinder impracticable, the option of certifying a number of discrete statewide

classes is unavailable.  Thus, the only alternative to certification of a multistate class is

hundreds of individual, duplicative lawsuits.  United cannot seriously dispute that such an

alternative is superior to a single action which would comprehensively resolve the claims

of every potential plaintiff.

Indeed, courts routinely find that national class actions are the superior method of

adjudication in cases such as these, where the alternative would be numerous individual

suits arising from the same challenged conduct.[16]  In Pharmaceutical Industry Average

---

[16]    See, e.g., Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper, 445 U.S. 326, 339 (1980) (class
certification the effective remedy in cases where the alternative is a "multiplicity of small individual suits");
In re Terazosin Hydrochloride, 220 F.R.D. at 700 (class action superior to "costly, inefficient" alternative of
"[m]ultiple lawsuits brought by thousands of consumers and third-party payers in seventeen different
states"); Perry v. FleetBoston Fin. Corp., 229 F.R.D. 105, 113 (E.D. Pa. 2005) (approving class settlement
as superior to "terribly inefficient" alternative of "thousands of lawsuits against [defendant] based on
similar factual predicates . . . "); In re Corel Corp. Sec. Litig., 206 F.R.D. 533, 544 (E.D. Pa. 2002)
(certifying class where denial of class certification would require "courts [to] face potentially thousands of
lawsuits arising out of [defendant's] alleged misrepresentations"); In re Polypropylene Carpet Antitrust
Litig., 178 F.R.D. 603, 625 (N.D. Ga. 1997) (where "contrary result" would be "hundreds of individual
trials," class action is superior method of adjudication); In re NASDAQ Market-Makers Antitrust Litig., 169

Wholesale Price Litigation, for example, Judge Saris certified a national class "under state laws with similar standards" on the basis that such a class was "superior to the other option: dividing up this monster case . . . and forcing the same [] plaintiffs, defendants, expert and fact witnesses and multiple courts to try this case over thirty times in states that have substantially similar standards." 252 F.R.D. at 107. Despite acknowledging such a case would be difficult to manage, Judge Saris concluded that it was "desirable to concentrate the litigation of [plaintiffs'] claims in one forum" because a "national class action will save substantial judicial and party resources." Id. Similarly, in Potash Antitrust Litigation, the district court observed that a national class action was the superior method of resolving the plaintiffs' claims because the alternative would be to "require claimants with potentially small claim amounts to abandon otherwise valid claims simply because pursuing those claims would not be economical. This would result in unjustly enriching the Defendants." 159 F.R.D. 682, 669 (D. Minn. 1995).

In addition, certification of a multistate class is undoubtedly the superior method of adjudicating Plaintiffs' claims because it is the best—perhaps the only—method of vindicating the rights of numerous individuals who would otherwise go without a remedy. The courts have long recognized that class actions are superior to individual lawsuits where recovery for each plaintiff is likely to be small. See, e.g., Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights"). This concern was aptly addressed in Simon, where the district court rejected an argument markedly similar

F.R.D. 493, 527 (S.D.N.Y. 1996) ("Multiple lawsuits would be costly and inefficient, and the exclusion of class members who cannot afford separate representation would be neither 'fair' nor an 'adjudication' of their claims.").

to that advanced by United and certified a national class. 124 F. Supp. 2d at 77. As the

court explained:

> Defendants and their experts on tort and conflicts law have properly
> emphasized the many nuances, both substantively and procedurally, in law
> from state to state. The court, however, cannot ignore two fundamentals: 1)
> it is dealing with human institutions that, unlike the exquisite machinery of
> atomic physicists with tolerances approaching zero, must interpret the law
> reasonably, with some play in its joints if it is to effectively serve its
> protective role, and 2) it is responding to a complex nationwide fraud
> allegedly created by defendants; the contention of the defendants that the
> plaintiff's claims are too widespread to be dealt with effectively by the courts
> must be considered in light of the allegations that it is defendants' pervasive
> fraud that has led to the need for nationally applicable remedies. The basic
> premise of law in this country remains that for every wrong there is a
> remedy, an effective and realistic remedy.

Id. Such considerations are particularly relevant here. The putative class consists of

hundreds of low wage-earners who will almost certainly be denied a remedy in the

absence of class treatment. Many have little incentive to bring an action individually since

any recovery would be far outweighed by the expense and commitment necessary to

prosecute the action individually. Others may not even know that they are entitled to any

manner of relief. Still others may be unwilling to file suit against United for fear of

retaliation or being branded a "troublemaker" in the industry.[17] Moreover, it is significant

that the very same claims which United now contends are too complex to be evaluated

nationally arise from a single national policy created by United. Simply put, United cannot

be allowed to commit a wrong on a national scale and then avoid liability by claiming that

the national scale of that wrong precludes class treatment. All of these factors weigh

---

[17]     As noted in their motion for class certification, (Pls.' Mem. at 18), fear of retaliation by an
employer is often taken by the courts as a factor favoring class treatment, since employees will very rarely
sign their names to a complaint against their employer. See Zelinsky v. Staples, Inc., 2008 WL 4425814,
at *4 (W.D. Pa. 2008) ("It has been repeatedly noted by courts and commentators that employees may be
loath to identify themselves as opt-in or named plaintiffs in wage actions for fear of retaliation from the
employer").

heavily in favor class treatment.  See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 186

(1974) (Douglas, J., joined by Brennan, J., and Marshall, J., dissenting) ("The class action

is one of the few legal remedies the small claimant has against those who command the

status quo.  I would strengthen his hand with the view of creating a system of law that

dispenses justice to the lowly as well as to those liberally endowed with power and

wealth").

### III.    PLAINTIFFS MAY PURSUE THEIR CLAIMS ON BEHALF OF A MULTISTATE CLASS.

In a last-ditch effort to defeat class certification, United contends that the named

Plaintiffs do not have standing to represent the class because they have not "personally

suffered injury in any of the twenty-two states in which they did not work."  (Def.'s Opp. at

18).  This argument erroneously conflates the procedure for evaluating standing and

determining class certification, however.   As the Supreme Court recognized in Ortiz v.

Fibreboard Corp., "class certification issues are, as they were in Amchem, 'logically

antecedent' to Article III concerns," and therefore issues concerning "Rule 23 certification

should be treated first."  527 U.S. 815, 839 (1999), quoting Amchem, 521 U.S. at 612-

613.  Significantly, the courts of this District have expressly adopted the rule enunciated in

Ortiz, refusing to evaluate standing when ruling on motions to certify a class on the

grounds that such questions are properly resolved after class certification.  See In re

Pharm. Indus. Average Wholesale Price Litig., 263 F. Supp. 2d at 193-194 ("I decline

defendants' invitation to determine whether a plaintiff . . . has standing to represent a

class of others . . . Those allegations fit better into the juridical linkage claim, and the

issue will be decided at a later stage in the litigation"); In re Relafen Antitrust Litig., 221

F.R.D. at 268-269 (adopting Ortiz; "once a class is properly certified, statutory and Article

III standing requirements must be assessed with reference to the class as a whole, not simply with reference to the individual named plaintiffs"), quoting Payton v. County of Kane, 308 F.3d 673, 680 (7th Cir. 2002).

Thus, United's attempt to defeat class certification by way of standing comes too soon, since any such questions must be resolved after the Court rules on Plaintiffs' present motion.  Even if standing were an issue for the Court's consideration at this time, however, that requirement would plainly be met here.  The named Plaintiffs had their income adversely affected by United's decision to impose and retain a $2 charge for each bag checked at curbside.[18]  The skycaps Plaintiffs seek to represent were all similarly deprived of tips and had their income adversely affected by United's policy.  Thus, the named Plaintiffs were all injured in the same way, by the same policy, as the putative class members.  These allegations clearly suffice to establish standing.[19]

## CONCLUSION

For all the reasons stated above and in their original motion, the Court should certify this case as a national class action encompassing skycaps who worked for United during the time that it imposed a $2 charge for each bag checked at curbside after February 1, 2006.

---

[18]    United contends that Plaintiffs must do more than "merely" allege an injury, but that position is without merit since Plaintiffs' allegations must be accepted as true for purposes of class certification.  See Payne v. Goodyear Tire & Rubber Co., 216 F.R.D. 21, 24 (D. Mass. 2003) ("A decision on class certification does not involve an examination of the merits of the underlying dispute, but rather serves the limited purpose of determining whether a class action is the most appropriate mode of adjudication . . . For purposes of this motion, the plaintiffs' allegations are therefore treated as true").

[19]    On this issue, none of the cases relied upon by United are availing.  Parks v. Dick's Sporting Goods was based on the defendant's motion to dismiss, not on the defendant's opposition to class certification.  2006 WL 1704477, at *1-*2 (W.D.N.Y. 2006).  The court's holding in that case was limited in that the plaintiff had failed to establish standing for himself, and the court refused to confer standing based purely on his class allegations.  Id. at *3.  Stone v. Crispers Restaurants, Inc., also arose from the defendant's motion to dismiss.  2006 WL 2850103, at *1 (M.D. Fla. 2006).  There, again, the district court dismissed the case because the plaintiff lacked standing independent of his class allegations.  Id. at *2.

Respectfully submitted,
JOSEPH BROWN, VINCENT McLAREN,
PHILIP FIELDS, CARLOS BORGES
CARREIRO, PATRICIA SHEA-SCANLON,
DHARAM SIAHGAL, ELVIS BUTCHER,
LARRY HOLD, SCOTT GORDON, MICHAEL
RASHAD, LORENZO WILEY, JAMES BROWN,
GERARDO AGUIRRE, KEVIN REAVES,
MICHAEL KALINOWSKI,

By their attorneys,


 /s/ Hillary Schwab_____
Shannon Liss-Riordan, BBO #640716
Hillary Schwab, BBO #666029
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
DATED: July 1, 2009                (617) 994-5800

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2009, I caused a copy of this document to be served by electronic filing on all counsel of record.


 /s/ Hillary Schwab_____
Hillary Schwab, Esq.