UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
JOSEPH BROWN, VINCENT McLAREN,      )
PHILIP FIELDS, CARLOS BORGES        )
CARREIRO, PATRICIA SHEA-SCANLON,    )
DHARAM SAIHGAL, ELVIS BUTCHER,      )
LARRY HOLT, SCOTT GORDON,           )
MICHAEL RASHAD, LORENZO WILEY,      )
JAMES BROWN, GERARDO AGUIRRE,       )
KEVIN REAVES, MICHAEL KALINOWSKI,   )
and all others similarly situated,  )   Civil Action No. 08-10689
                                    )
                                    )
            Plaintiffs,             )
                                    )
      v.                            )
                                    )
UNITED AIR LINES, INC.,             )
                                    )
            Defendant.              )
_____ )

**PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S DECISION GRANTING DEFENDANT'S MOTION TO DISMISS**

After initially ruling in Plaintiffs' favor on United's motion to dismiss, the Court reversed its original position and concluded that Plaintiffs' claims were preempted by the Airline Deregulation Act (ADA) because they related to airline services. For several reasons, this decision was incorrect. First, the Court made numerous factual assumptions about how United could have responded to Plaintiffs' challenge to the $2 charge. Because this issue was before the Court on a motion to dismiss, it was improper for the Court to make these factual assumptions; further development of the factual record is required before it can be determined whether the claims have a "significant impact" on airline services (or whether instead the impact, if any, is tenuous

or remote). Second, the Court inaccurately concluded that Plaintiffs had rejected the possibility that a change in United's methods of *notifying* passengers about the $2 charge could resolve the claims in the case. To the contrary, there are several ways in which United could have taken affirmative steps to notify passengers that the $2 charge was not a tip for skycaps, and it must be for a jury to decide whether those steps would have sufficed.

Accordingly, for the reasons set forth below, this Court should reverse its decision dismissing Plaintiffs' claims under the ADA.[1]

## BACKGROUND

On April 24, 2008, the plaintiffs filed this case, alleging that United Air Lines' imposition of a $2 per bag charge for skycaps' services violated state common law and, as to the skycaps at Boston Logan Airport, the Massachusetts Tips Law, Mass. Gen. L. c. 149 § 152A. United moved to dismiss, arguing that the skycaps' claims were preempted under the Airline Deregulation Act, and the Court denied United's motion to dismiss, "on the authority of DiFiore et al. v. American Airlines, 483 F. Supp. 2d 121 (2007)," Docket Entry, 3/26/2009, in which Judge Young had denied American Airlines' motion to dismiss nearly identical claims, holding that those claims were not preempted under the Airline Deregulation Act. After Judge O'Toole reached the opposite conclusion in Travers et al. v. JetBlue Airways, Inc., 2009 WL 2242391 (D. Mass. July

---

[1] Plaintiffs also note that a purpose of federal preemption is to provide broad uniformity for national actors, such as the airlines, so that they do not need to worry about many nuances of state law. Notably, here, although Plaintiffs based their claims on state law, they brought this case as a national class action, challenging the airline's practices nationally (based upon the similarities of state law), thus obviating the concern that the airline would need to tailor its practices regarding curbside check-in based upon distinctions of the laws of various states.

23, 2009), this Court granted United's motion for reconsideration on September 22, 2009. The Court also entered an order dismissing the case on September 22, 2009.

## ARGUMENT

I. **THE COURT IMPROPERLY MADE FACTUAL ASSUMPTIONS THAT ARE INAPPROPRIATE ON A MOTION TO DISMISS.**

In holding that Plaintiffs' claims were preempted because they have a significant effect on service, the Court made numerous factual assumptions about United's options to address the issues raised in Plaintiffs' complaint and the impact of each of those options on services. Because this is a motion to dismiss, the Court inappropriately assumed facts that are not in the record (indeed, there is no record in this case yet) and failed to view the facts most favorably to Plaintiffs, as it was required to do under Rule 12(b)(6).

First, the Court concluded that Plaintiffs' "claims would require passengers to pay online beforehand, or with a credit card at the curb, or even remove service from the curb completely." Ct. Op. at 8 (Docket No. 60). There is absolutely no evidence of record from which the Court could conclude that these would be United's three options, much less any evidence from which the Court could conclude that *as a matter of law*. It was inappropriate for the Court to make this factual determination on United's motion to dismiss—the factual determination of what steps United could take to address Plaintiffs' concerns must be made after discovery, either by the Court in viewing evidence submitted with a summary judgment motion or by a jury at trial.[2]

---

[2] Indeed, there are numerous other ways in which United might have responded to the claims in the case, including, for example, continuing to charge the $2 but letting the skycaps keep the proceeds; collecting the $2 in another way such as a kiosk on the curb that would take cash or credit cards; adding the $2 charge onto the $11-$30 fees that the airline now imposes for checked bags (amounts which are

3

Similarly, it was improper for the Court to make factual conclusions about the impact of each of these options. As to passengers paying online beforehand, the Court concluded that "[p]ayment beforehand would force passengers to decide whether they want to check bags before they have even packed for the trip." Ct. Op. at 8. However, the logistics and effect of payment beforehand is unquestionably a factual issue and cannot be decided on a motion to dismiss. For example, it would require development of a factual record to determine how paying online beforehand would work (*e.g.*, whether it could be done at any time before the flight, including immediately before leaving for the airport; whether and to what extent pre-payment would actually affect passengers' baggage check-in practices, etc.).

As to paying with a credit card at the curb, the Court concluded that "[t]he credit card solution, if feasible on existing machines for printing boarding passes, would require customers checking bags both to carry a credit card and to use the machines for printing boarding passes even if they had checked in online prior to arriving at the airport." Ct. Op. at 8. Once again, how credit card payment would work and how it would impact service to customers is a factual question.[3] As to both of these proposed solutions to the claims in the case (which are factual in themselves), it was inappropriate for the Court to determine their effect on a motion to dismiss.

Finally, the Court rejected the option of "remov[ing] service from the curb completely," holding that "elimination of curbside check-in would alter baggage handling

---

substantially higher than amounts typically associated with tips for skycaps); or changing the methods by which it notifies passengers about the $2 charge (see Section II, infra).

[3]   Or whether machines could be used (or are already available for use) that accept cash as well as credit cards is another question that has not been explored since a record has not yet been developed.

4

service altogether." Ct. Op. at 8.  For several reasons, this conclusion was in error.  First, it is not true that "remov[al of] *service* from the curb"/"elimination of *curbside check-in*" would address Plaintiffs' claims in this case; only elimination of the *$2 per bag fee* would have addressed the claims.  Indeed, had United eliminated curbside check-in service in response to the complaint by, for example, terminating the skycaps, that might constitute unlawful retaliation.[4]  Moreover, as to the impact of eliminating the $2 charge (or allowing skycaps to retain the proceeds of that charge), that cannot be decided on a motion to dismiss.

      Interestingly, (as mentioned in footnote 2, supra) after this case was filed, United did indeed abolish the $2 per bag fee but has continued to offer skycap curbside check-in services to passengers.  Moreover, like most other major airlines, United has imposed other higher fees for checked baggage since that time—$11 to $20 for the first bag and $21 to $30 for the second bag.  These fees, which can be paid by credit card, are on top of the numerous other fees that apply to baggage such as excess, overweight, and oversized bag fees.  Exhibit 1 (excerpts from United's website re: baggage fees).  Moreover, just today, United announced yet another option with respect to checked bags—"Premier Baggage," by which a passenger may pay $249 for an annual subscription to check bags.  Id.  In light of this structure of numerous fees for checked baggage (and the fact that United continues to offer skycap services without the $2 fee), it must be for a fact finder to determine the impact (if any) of the elimination of the $2 per bag fee on United's services.

---

[4]     In Mitchell et al. v. US Airways, Inc., which challenges US Airways' $2 per bag charge, the skycaps have alleged that US Airways' decision to stop using skycaps for curbside check-in after the initiation of that lawsuit was retaliatory and constituted tortious interference with the skycaps' employment.  See 3d Am. Compl. (Docket No. 33), D. Mass. Civil Action No. 08-10629-NG.

5

The Ninth Circuit has explicitly recognized that the question of whether a law has a significant impact on a price, route, or service may be a factual question that cannot be decided as a matter of law.  Montalvo v. Spirit Airlines, 508 F.3d 464 (9th Cir. 2007), concerned passengers' negligence action against several airlines based on their failure to warn about the danger of developing deep vein thrombosis and the provision of unsafe seating configurations.  The Ninth Circuit reversed the district court's decision that the claim was preempted under the ADA because the reconfiguration of seating would have a significant impact on airline ticket prices, explaining:

> In this case, however, Plaintiffs have not conceded that any seating reconfiguration would result in a significant effect on airline ticket prices or would interfere with the forces of competition. The Airlines have not yet produced any evidence on this issue, and we have no factual basis on which to judge the effect of any seating reconfiguration on prices. We thus cannot determine whether a seat reconfiguration would materially impact federal deregulation, which this court has determined is a prerequisite for finding preemption. See Charas [v. Trans World Airlines, Inc.], 160 F.3d [1259,] 1265-66 [(9th Cir. 1998)].
>
> The Supreme Court has instructed that only those state laws that have a significant effect on prices are preempted by the ADA. Morales [v. Trans World Airlines, Inc.], 504 U.S. [374,] 384 [(1992)].  Without more factual development, we cannot determine whether the preemptive reach of Morales extends as far as the seating configuration issue presented in this case. We therefore remand the reconfiguration claim to the district court for further proceedings.

Id. at 475.  As in Montalvo, the factual issues involved in determining the impact (if any) of Plaintiffs' claims on United's curbside check-in services require denial of the motion to dismiss and development of an evidentiary record.  See also Professional Towing & Recovery Operators of Illinois v. Box, 2008 WL 5211192, at *4 (N.D. Ill. 2008) (court's ruling on preliminary injunctive "tentative" because of "the limited record"; observing that "a more developed record may shed light on the extent to which provisions of the State

6

Towing Law impact the "prices, routes, and services" of towing companies—and whether any such impact is significant or merely incidental or remote"); compare Blackwell v. SkyWest Airlines, Inc., 2008 WL 5103195, at *18 (S.D. Cal. 2008) (finding ADA preemption on a "robust and uncontroverted" factual record).

## II. PLAINTIFFS DO CHALLENGE THE ADEQUACY OF UNITED'S SIGNAGE REGARDING THE $2 CHARGE.

The Court observed in its decision that "Plaintiffs have rejected the possibility of changing signage to notify passengers that the fees are not tips" and also noted that "[a] mere request that airlines change the signs at curbside baggage check-in presumably would not invoke ADA preemption." Ct. Op. at 8, n.6. However, it cannot be determined from the face of Plaintiffs' complaint that United could not have resolved their claims through clarification of its signage (or other improvement of its notification of passengers about the $2 charge).[5] It should be noted that the issue here is not simply whether United could have changed the signs themselves, but whether it could have provided effective notice to passengers about the $2 charge not being a tip for skycaps through other means, e.g., through website notices, emails, flyers or pamphlets, etc.

In the DiFiore trial, the plaintiffs submitted evidence and argued both that passengers did not see American's signs and that the wording on the signs was confusing (as well as evidence that other notification means, such as website postings

---

[5] It is true that Plaintiffs stated in their brief in opposition to United's motion to dismiss that "*Plaintiffs do not rest their argument* on a contention that the wording on United's signs relating to the $2 charge should be changed to come into compliance with the Tips Law" (emphasis added), but that argument should not be construed as a complete rejection of the possibility of changing signage, see Ct. Op. at 8 (citing Pls.' Opp'n to Def.'s Mot. to Dismiss at 2); Plaintiffs merely stated that they did not base their entire argument on this contention.

7

and emails to passengers, did not contain sufficient information).[6]  Here, as in DiFiore, the question of whether signage and other forms of notice could have provided sufficient notice of the fact that the $2 charge did not go to the skycaps is a factual question.[7]  At a minimum, the Court should reconsider its ruling granting a motion to dismiss based on this assumption and allow Plaintiffs to proceed on their claim that United's signage constituted inadequate notice to passengers that skycaps were not retaining the $2 charge.

### III. UNITED CANNOT INVOKE ADA PREEMPTION HERE, WHERE IT DENIES THAT IT EMPLOYS THE SKYCAPS, BECAUSE CURBSIDE CHECK-IN SERVICE IS THEREFORE NOT A SERVICE OF AN AIR CARRIER.

There is yet another reason that United cannot prevail on its claim that Plaintiffs' claims impact an airline service.  United takes the position that the airline does not provide skycap service and that, instead, it contracts out its curbside check-in service to third-party vendor companies.  Indeed, United purports to have no employment relationship with the skycaps or any other involvement in the provision of curbside services.  See Def. Mem. in Support of Mot. to Dismiss, at 3 ("all of the named plaintiffs who work in Massachusetts are employed by a contractor (Huntleigh Corporation), not by United").[8]

---

[6]  Specifically, there was testimony that passengers did not understand the phrase "gratuities not included," either because of language or cultural barriers or because they interpreted that phrase to mean that passengers could give additional tips on top of the $2 charge (like leaving an additional tip at a restaurant on top of a mandatory service charge).  As to other forms of notification, American provided notice of *the existence* of the $2 charge on its website and in emails to passengers but not the fact that the $2 charge was not being retained by the skycaps.

[7]  Here, in contrast to the DiFiore case, as the evidentiary record would ultimately show, United's signage did not even include a notation that "gratuities are not included".

[8]  Plaintiffs dispute this assertion and allege that United is the skycaps' joint employer for purposes of liability under the federal Fair Labor Standards Act.  See Elvis Butcher et al. v. United Air Lines, Inc., Complaint (filed today).  However, United cannot have it both ways—either it is not the skycaps'

8

Because, by United's own admission, skycap services are not a "service[] of any *air carrier*," 49 U.S.C. App. § 1305(a) (emphasis added), United should not be able to claim the benefit of ADA preemption as to this service.  This limitation of the ADA only to services actually provided by the air carrier itself is consistent with the purpose of the ADA, which was "to leave the bargained-for aspects of the air carrier-air passenger relationship to the workings of the market, i.e., to prevent the states from "impos[ing] their own public policies or theories of competition or regulation on the operations of an air carrier."  Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1255 (11th Cir. 2003) (quoting American Airlines, Inc. v. Wolens, 513 U.S. 219, 229 n.5 (1995)).  That purpose is not served by applying ADA preemption to claims relating to services provided by other airport workers who are not directly employed by the air carriers, such as the skycaps here (as well as, *e.g.*, airport food service vendors and shuttle drivers).

## CONCLUSION

The Court erred in granting a motion to dismiss based upon assumptions of fact that have not yet been fleshed out through an evidentiary record.  Factual development of this case is required before a conclusion may be reached as to the impact of any changes by United (either to the method of collecting the $2 charge, curbside check-in procedures, or the notification of passengers about the $2 charge) on the airline's services (if the provision of curbside check-in through an outsourced contractor can even be considered an airline's service).  Accordingly, it was improper for the Court to hold that Plaintiffs' claims were preempted by the ADA on this record, and the Court should reverse its decision dismissing the complaint.

---

employer, in which case the "air carrier" does not provide skycap services, or it is the skycaps' joint employer and is therefore required to comply with the wage laws.

9

       Respectfully submitted,

       JOSEPH BROWN, VINCENT McLAREN,
       PHILIP FIELDS, CARLOS BORGES
       CARREIRO, PATRICIA SHEA-SCANLON,
       DHARAM SAIHGAL, ELVIS BUTCHER,
       LARRY HOLT, SCOTT GORDON, MICHAEL
       RASHAD, LORENZO WILEY, JAMES BROWN,
       GERARDO AGUIRRE, KEVIN REAVES,
       MICHAEL KALINOWSKI,
       and all others similarly situated,

       By their attorneys,

       /s/ Hillary Schwab
       Shannon Liss-Riordan, BBO #640716
       Hillary Schwab, BBO #666029
       LICHTEN & LISS-RIORDAN, P.C.
       100 Cambridge Street, 20th Floor
       Boston, MA 02114
       (617) 994-5800

Dated:    October 6, 2009

## CERTIFICATE OF CONFERENCE

     Pursuant to Local Rule 7.1, I certify that I conferred with counsel for Defendant regarding the subject of this motion; the Defendant does not assent to the relief requested.

       /s/ Hillary Schwab
       Hillary Schwab, Esq.

## CERTIFICATE OF SERVICE

     I hereby certify that, on October 6, 2009, a copy of this document was served by electronic filing on all counsel of record.

       /s/ Hillary Schwab
       Hillary Schwab, Esq.